The BOARD OF EDUCATION OF VAL-
LEY VIEW COMMUNITY UNIT
SCHOOL DISTRICT NO. 365U, et al.,
Plaintiffs-Appellants,

v.

Kent BOSWORTH, et al.,
Defendants-Appellees.

Nos. 82–1725, 82–1788.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 2, 1982.

Decided Aug. 3, 1983.

Barry L. Moss, Moss & Bloomberg, Ltd., Bolingbrook, Ill., for plaintiffs-appellants.

Gregory G. Lawton, Judge, Kurnik & Knight, Ltd., Park Ridge, Ill., Stephen R. Swofford, Hinshaw, Culbertson, Moelman, Hoban & Fuller, Chicago, Ill., for defendants-appellees.

Before CUMMINGS, Chief Judge, ESCH-BACH, Circuit Judge, and SWYGERT, Senior Circuit Judge.

SWYGERT, Senior Circuit Judge.

The plaintiffs in this case are certain local government units in Will County, Illinois, and a group of local taxpayers; the defendants are the County of Will, the county tax assessor, and two banks that act as collectors and depositories of taxes. On appeal the plaintiffs challenge the district court's dismissal, in deference to parallel state court proceedings, of their federal complaint, which charged that the defendants violated state law by failing to distribute collected tax revenues plus interest to the local public entities, thereby conspiring to deprive and actually depriving them of property without due process, and of the equal protection of the laws, in violation of 42 U.S.C. §§ 1983 and 1985 (1976 & Supp. V 1981).

### I

On June 17, 1981, the Board of Education of Valley View Community Unit School District No. 365U ("the Board") and the school district itself, recipients of county tax revenues, and eleven individual taxpayers filed suit in federal district court on behalf of themselves and all other similarly situated individuals and public entities within Will County (except Will County itself). Their complaint alleged that Kent Bosworth, the Will County Treasurer and ex officio County Collector, by retaining tax revenues for substantial periods and transferring accrued interest to the county treasury, violated his duty under Illinois law to distribute collected taxes allocated to each of the public entities by the first of each month,[1] his duty to distribute to the entities any interest earned on the money withheld,[2] and his obligation under the Illi-

---

1. See Ill.Rev.Stat. ch. 120, ¶ 761 (1979) (current version at *id.* (1981)), which provided in relevant part:

    [T]he county collector shall on the first day of June and the first day of each and every month thereafter, pay over to the other proper authorities or persons the amounts in his hands and payable to them as taxes, not theretofore paid over . . . .

2. See *id.* ch. 85, ¶ 902 (1981), which provides in relevant part:

    To the extent a public agency [defined by *id.* ¶ 901 to include counties] has custody of

nois Constitution not to be compensated out of collected fees.[3] The plaintiffs also alleged that the two bank defendants, as deputy tax collectors, see Ill.Rev.Stat. ch. 120, ¶ 665 (1981), and as depositories of taxes, see id. ¶ 674, equally breached these duties. Finally, they alleged that the banks and Will County conspired with Bosworth to breach these duties, the banks profiting by the investment of the tax revenues at below-market rates, and the county profiting by the transfer of the interest earned on the revenues to its treasury. The Board and the school district alleged that these violations deprived them of property and of the equal protection of the laws (because another local public entity—Will County itself—was not subject to these deprivations). The individual plaintiffs claimed that the violations of Illinois law deprived them of property by subjecting them to possible increases in assessments for the public entities' debt financing or possible losses of services. The plaintiffs sought various forms of relief, including a declaratory judgment that the taxes and interest were unlawfully withheld, an injunction against further withholding, an accounting of all

interest earned on the taxes, damages for the difference between the market rate of interest and the amount of interest actually earned, and punitive damages.

On the defendants' motion to dismiss, the district court first addressed the various plaintiffs' standing to sue. It concluded that the public entities lacked standing on the ground that political subdivisions of a state have no constitutional rights that they may invoke against their creator, citing *Williams v. Mayor & City Council of Baltimore,* 289 U.S. 36, 40, 53 S.Ct. 431, 432, 77 L.Ed. 1015 (1933), and *Village of Arlington Heights v. Regional Transportation Authority,* 653 F.2d 1149, 1151–53 (7th Cir.1981). It also concluded that the individual plaintiffs lacked standing to the extent that the alleged violations simply redistributed funds from one unit of government whose services they enjoyed to another, reasoning that they then suffered no actual net injury. It held that they did have standing to sue, however, to the extent they alleged that investing the tax revenues at below-market rates was a breach of duty, because

funds not owned by it or another public agency [defined by *id.* to include school districts] and does not otherwise have authority to invest such funds, the public agency may invest such funds as if they were its own. . . . All earnings accruing on any investments or deposits made pursuant to the provisions of [the Investment of Public Funds] Act shall be credited to the public agency by or for which such investments or deposits were made, except where by specific statutory provisions such earnings are directed to be credited to and paid to a particular fund.

The defendants argued that the relevant statute is *id.* ch. 36, ¶ 22.1, which provides:

All earnings accruing on any investments or deposits made by the County Treasurer whether acting as such or as County Collector, of county monies as in this Act is defined, shall be credited to and paid into the County Treasury for the benefit of the county corporate fund to be used for county purposes, except where by specific statutory provisions such earnings are directed to be credited to and paid to a particular fund.

After the filing of the plaintiffs' federal complaint, *id.* ch. 120, ¶ 761, see *supra* note 1, was amended to provide in relevant part:

[T]he county collector in counties with a population of 3,000,000 or more, shall on the

first day of June and the first day of each and every month thereafter, pay over to the other proper authorities or persons the amounts in his hands and payable to them as taxes, not theretofore paid over. In counties with a population of less than 3,000,000, the county collector shall within 30 days after due date and at 30-day intervals thereafter, pay over to the other proper authorities or persons the amounts in his hands and payable to them as taxes, not theretofore paid over. Taxes collected in counties with a population of less than 3,000,000 and not distributed to other proper authorities shall be invested in accordance with the provisions of [*id.* ch. 102, ¶¶ 34–35], and *the interest accrued on monies held by the county collectors in excess of 30 days after the due date and the succeeding 30 day intervals thereafter, shall be distributed along with the principal amount of taxes.* (Emphasis added.)

**3.** *See* Ill. Const. art. 7, § 9(a), which provides in relevant part:

Compensation of officers and employees and the office expenses of units of local government shall not be paid from fees collected.

such a violation would result in a net loss directly felt by the local taxpayers.

The district court then considered whether it should abstain from deciding the case despite the existence of a live issue. It concluded that abstention was proper because of the existence of parallel state court proceedings, under the rationale of *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). At the time of its decision, two similar state suits had been filed in the Circuit Court for the Twelfth Judicial Circuit, Will County, Illinois: [4] *Board of Education of Valley View Community Unit School District No. 365U v. Bosworth,* No. 80 MR 42, filed March 17, 1980, in which one of the named plaintiffs in the present case alleged the same violations of state law relied on in the federal complaint, and sought a writ of mandamus to compel the distribution of withheld taxes, an accounting, a constructive trust on the interest, damages, removal of Kent Bosworth from office, and a declaratory judgment that the county collector's practices were unlawful; and *Board of Commissioners of Bolingbrook Park District v. County of Will,* No. 81 CH 415, filed June 23, 1981 (nearly simultaneously with the present case), a class action on behalf of all public entities in Will County alleging that the defendants unlawfully failed to distribute interest earned on withheld tax revenues and seeking a declaratory judgment that the interest was unlawfully retained, injunctive relief, an accounting, and attorney's fees. The district court concluded that abstention was appropriate because the state proceedings, unlike the federal proceedings, in which only one claim of the individual plaintiffs could be pursued, could furnish complete relief; because the federal proceedings had not progressed beyond the filing of the complaint and motions to dis-

miss; and because the case involved sensitive issues of local taxation.

On appeal the plaintiffs challenge both the district court's rulings on standing and its decision to abstain, and the defendants urge reversal of the ruling that the plaintiffs have standing on any claim, as an alternative ground for affirming the judgment. Because we affirm the decision to abstain, though for reasons somewhat different than those relied on by the district court, we need not reach the standing questions addressed below.

II

The defendants urge numerous grounds for abstention or dismissal in support of the district court's judgment. Their first argument is based on the Tax Injunction Act, which provides:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341 (1976). They argue that compelling the distribution of collected taxes is as disruptive to state autonomy as suspending the collection of taxes, and conclude that the Act's prohibition applies. They cite *California v. Grace Brethren Church,* 457 U.S. 393, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982), which held that the prohibition on injunctions cannot be evaded by framing the complaint to seek declaratory relief, for the proposition that the Act's reach is broader than its literal terms. But *Grace Brethren Church* is based on the rationale that injunctive and declaratory relief are near-equivalents, *id.,* 102 S.Ct. at 2508–09; *cf. Samuels v. Mackell,* 401 U.S. 66, 70–73, 91 S.Ct. 764, 766–68, 27 L.Ed.2d

4. On March 31, 1983, the plaintiffs in this suit filed a complaint against the same defendants in the Circuit Court for the Twelfth Judicial Circuit, making similar allegations and seeking similar relief as in their federal complaint. The bank defendants urge this court to take judicial notice of the filing as further support for abstention. The plaintiffs argue that the suit was

filed only because the relevant statute of limitation was about to run, and not because their zeal to litigate their claims in a federal forum had abated. Because we affirm the district court's decision to abstain without considering this third state suit, we need not resolve this controversy.

688 (1971); it does not justify expanding the Act to bar types of relief different in kind from its enumerated list. We cannot agree that compelling the distribution of collected taxes in accordance with state law is nearly equivalent to enjoining tax collection.

Despite the inapplicability of the Tax Injunction Act itself, a federal court may nevertheless exercise its discretion to withhold equitable relief in reliance on the "fundamental principle of comity between federal courts and state government that is essential to 'Our Federalism,' particularly in the area of state taxation," that underlies the Act. *Fair Assessment in Real Estate Association v. McNary,* 454 U.S. 100, 103, 102 S.Ct. 177, 179, 70 L.Ed.2d 271 (1981). In *Fair Assessment,* the Supreme Court held it proper to abstain from deciding a claim that assessments of new and old property were unequal and that reassessment was used as a retaliatory tool, because any relief granted would operate to suspend the collection of taxes assessed at the higher rates, thereby interfering with the exercise of a central sovereign power. *Id.* at 114–15, 102 S.Ct. at 185. It thus invoked the same principle of comity that animated its decision in *Younger v. Harris,* 401 U.S. 37, 44–45, 91 S.Ct. 746, 750–51, 27 L.Ed.2d 669 (1971), not to enjoin state criminal proceedings. 454 U.S. at 112–13, 102 S.Ct. at 184; *see Colorado River,* 424 U.S. at 816–17, 96 S.Ct. at 1245–46. *Younger* and similar cases are based on a desire not to interfere with a state's sovereign functions. In the present case no such sovereign function is at stake because the plaintiffs do not challenge the policies or means by which the state assesses and collects taxes; on the contrary, they defend that system and seek to compel compliance with it by enforcing its requirement that collected taxes be distributed. Their claim thus vindicates state policy rather than interfering with it. *Cf. Heritage Farms, Inc. v. Solebury Township,* 671 F.2d 743, 747–48 (3d Cir.) ("[T]here is no danger that a federal court decision in this case [challenging building and zoning decisions] will disrupt Pennsylvania's policies or plans with respect to land use . . . . The

policies embodied in the Municipalities Planning Code are not being attacked—it is rather the application of those policies by a single township that is at issue. In fact, if it is found that the defendants acted unlawfully, the state and local policies will be vindicated."), *cert. denied,* 456 U.S. 990, 102 S.Ct. 2270, 73 L.Ed.2d 1285 (1982). We conclude that considerations of comity do not counsel restraint in this case.

We find the defendants' further argument that abstention is proper under the rationale of *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), unconvincing for a similar reason. In *Burford,* the Court approved a district court's decision to dismiss a complaint involving the state's complex oil conservation scheme, because of the dangers of hindering the development of coherent state policy and interfering with its comprehensive administrative scheme administered by a specialized tribunal. *Id.* at 332–34, 63 S.Ct. at 1106–08. Although tax questions in general may constitute "questions of state law bearing on policy problems of substantial public import," *Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1244, the particular issue raised in the present case does not justify *Burford* abstention. Here state policy is expressed relatively simply in a series of accessible statutes, not entrusted to the discretion of a specialized agency as in *Burford;* here state policy is not under attack; here the adjudication of issues raised by the policy is not entrusted to a specialized tribunal. *See Evans v. City of Chicago,* 689 F.2d 1286, 1295–96 (7th Cir.1982); *Heritage Farms, Inc. v. Solebury Township,* 671 F.2d at 747–48; *Nasser v. City of Homewood,* 671 F.2d 432, 440 (11th Cir.1982); *IBEW Local No. 1245 v. Public Service Commission,* 614 F.2d 206, 211–12 (9th Cir.1980).

Finally, the defendants argue that abstention is proper under the doctrine of *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 500–01, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941), in which the Court held it proper to exercise equitable discretion to abstain when the resolution of a difficult threshold

question of state law could obviate the need to decide a constitutional question. They argue that it is uncertain whether the plaintiffs have a property right under state law, citing *Board of Commissioners of Chicago Ridge Park District v. County of Cook,* No. 81 CH 4751 (Circuit Court of Cook County, Oct. 6, 1981) (county treasury may retain interest earned on deposited tax revenues),[5] and that if no property right existed no due process issue would be presented under section 1983. To the extent that this objection premises the lack of clarity of state law on the existence of a state court decision construing the relevant statutes, it is odd; but in any case the more recent decision of the Illinois Supreme Court in *Board of Commissioners of Wood Dale Public Library District v. County of DuPage,* No. 57184 (Ill.S.Ct. May 27, 1983) (a decision not brought to our attention by the parties), put the issue at rest by determining that the interest on retained tax revenues accrues to the public entities. *Pullman* abstention would be improper because state law is clear.

### III

None of the well-established avenues for dismissal or abstention, therefore, supports the district court's order. In such cases federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246. Nevertheless, we find abstention to be proper, as it was in *Colorado River,* because of the pendency of parallel state proceedings. The existence of such proceedings is not a bar to federal jurisdiction, *see Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* —— U.S. ——, 103 S.Ct. 927, 936, 74

L.Ed.2d 765 (1983); *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246, and federal courts ordinarily have a "heavy obligation to exercise jurisdiction," *id.* at 820, 96 S.Ct. at 1247. But the Court recognized in *Colorado River* that the existence of parallel proceedings may in exceptional circumstances justify staying the exercise of jurisdiction, and identified the kinds of considerations relevant to this prudential decision. *Id.* at 818–20, 96 S.Ct. at 1246–47. Those considerations include the possibility of avoiding piecemeal adjudication, the convenience of the forum, the order in which jurisdiction was obtained in the state and federal forums, the extent to which the federal proceedings have progressed, and the degree to which the rights at stake are peculiarly local. *Id.* In its recent reaffirmation of these principles, the Court emphasized that the decision whether to abstain "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction. The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Moses H. Cone Memorial Hospital,* 103 S.Ct. at 937.

One consideration has determinative force in the present case. Between the time of the district court's decision and oral argument in this court the parties in one of the two parallel state suits entered a consent decree that established the plaintiffs' entitlement to prompt distribution of collected taxes and provided injunctive relief. *Board of Education of Valley View Community Unit School District No. 365U v. Bosworth,* No. 80 MR 42 (12th Judicial Circuit,

---

**5.** The bank defendants also cite *Board of Library Trustees of Wood Dale Public Library District v. County of DuPage,* No. 81 CH 575 (18th Judicial Circuit, Sept. 15, 1981) (later reversed, *see infra*), and *Board of Education of Aptastisic-Tripp School District No. 102 v. County of Lake,* No. 81 CH 479 (19th Judicial Circuit, n.d.), but failed to attach copies of these decisions to their brief, in violation of Seventh Circuit Rule 9(d). Either for inscrutable reasons or through oversight, the defend-

ants failed to cite the similar decision in the second of the parallel state suits relied on by the district court below to justify abstention. *Board of Commissioners of Bolingbrook Park District v. County of Will,* No. 81 CH 415 (12th Judicial Circuit, Feb. 3, 1982); *see* Record 50. In any case, that decision has been reversed on appeal. No. 82–140 (Ill.App. Nov. 5, 1982), *aff'd,* 70 Ill.Dec. 862, 450 N.E.2d 335 (Ill. S.Ct.1983).

Sept. 1, 1982). Moreover, in an unpublished decision issued three days after we heard oral argument and recently affirmed by the Illinois Supreme Court (but never directly brought to our attention by the parties),[6] the Illinois Appellate Court ruled in the second parallel state suit "that the [public entities within Will County] are entitled to the interest monies which they claim," reversing the unpublished decision (buried in the record on appeal but not mentioned in the parties' briefs) of the Circuit Court of Will County dismissing the complaint. *Board of Commissioners of Bolingbrook Park District v. County of Will,* No. 82–140, slip op. at 6 (Ill.App. Nov. 5, 1982), *rev'g* No. 81 CH 415 (12th Judicial Circuit, Feb. 3, 1982), *aff'd,* 70 Ill.Dec. 862, 450 N.E.2d 335 (Ill.S.Ct.1983). The consent decree in the first state suit furnished the plaintiffs final relief on the distribution-of-taxes issue, and relief on the interest issue will in all likelihood be forthcoming in the second suit on remand. Much of the plaintiffs' federal complaint is therefore moot already, and the rest apparently will become moot shortly.[7] Because the state proceedings have progressed so far, it is prudent to abstain.

■ The district court did more than abstain, however: it dismissed the complaint outright. In our recent decision in *Evans Transportation Co. v. Scullin Steel Co.,* 693 F.2d 715, 717–18 (7th Cir.1982), we held that when a federal court declines to exercise jurisdiction because of the pendency of par-allel state proceedings, it should stay rather than dismiss the case because of the possible collateral consequences of characterizing the action as a dismissal. If all the issues are resolved in the state proceedings, as expected, the distinction will have no practical effect; but if not, the parties should have access to the federal court without the obligation to file again and the fear that the statute of limitation will have run. We therefore modify the district court judgment to stay rather than dismiss the action, and affirm the judgment as so modified.

---

6. On May 16, 1983, in response to the bank defendants' "Motion for Court to Take Judicial Notice of Parallel State Court Proceeding" filed May 10, 1983, *see supra* note 4, the plaintiffs did state that this suit was "pending upon the County's motion for leave to appeal to the Illinois Supreme Court." This oblique reference, which was unaccompanied by a copy of the decision, *see* Seventh Circuit Rule 9(d), and which incorrectly noted the appellate case number as 83–145, was the first indication provided to this court that the Illinois Appellate Court had taken jurisdiction or acted at all. Such a failure to keep the court informed is especially inexcusable in a case of this kind.

7. The incompleteness of the record makes it impossible for us to determine the degree to which this case is already or likely to become moot. Although the Supplemental Record contains the consent decree and stipulation of dismissal of certain counts of *Board of Education of Valley View Community Unit School District No. 365U v. Bosworth,* No. 80 MR 42 (12th Judicial Circuit), we cannot determine which, if any, issues are still pending in that case, because no copy of the amended complaint is included; the original complaint, *see* Record 46, clearly does not correspond to the stipulation. Should the district court determine on remand that the entire case is moot, dismissal will be proper.