780 F.2d 691
 23 ERC 2036
 LUMEN CONSTRUCTION, INC., Louis Villasenor and Mary
Villasenor, Plaintiffs- Appellants,
v.
BRANT CONSTRUCTION COMPANY, INC., Region Management &
Leasing, Inc., Region Construction Company, Inc., Cole &
Associates, Inc., City of Valparaiso Board of Public Works,
and United States Fidelity & Guarantee Company, Defendants- Appellees.
 No. 85-1703.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 5, 1985.
Decided Dec. 30, 1985.
As Amended Jan. 7, 1986.
 
 1
 F. Joseph Jaskowiak, Hoeppner, Wagner & Evans, Valparaiso, Ind., for plaintiffs-appellants.
 
 
 2
 Stephen M. Maish, Griffith, Ind., for defendants-appellees.
 
 
 3
 Before CUDAHY and RIPPLE, Circuit Judges, and WILL, Senior District Judge.*
 
 
 4
 WILL, Senior District Judge.
 
 
 5
 This appeal presents the recurring question of whether a district court properly exercised its discretion to abstain in deference to a parallel state court proceeding. The district court, based on "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," dismissed the case without prejudice. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976), quoting Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952). We affirm the district court's decision to abstain, but modify its order of dismissal to a stay.
 
 
 6
 * Defendant-appellee City of Valparaiso Board of Public Works ("Valparaiso") received a grant from the Environmental Protection Agency ("EPA") to expand the city's wastewater treatment plant. A basic condition of the grant was that at least ten percent of the amount expended would be paid to minority business enterprises. Valparaiso hired defendant-appellee Cole & Associates ("Cole") as its consulting engineer and representative on the project and, on July 9, 1982, contracted with defendant-appellee Brant Construction Company ("Brant") to perform construction work. The contract price was in excess of nineteen million dollars.
 
 
 7
 In accordance with the conditions of the grant, Brant subcontracted excavation work on the project to plaintiff-appellant Lumen Construction Company ("Lumen"), a qualified minority business enterprise owned and operated by an Hispanic couple, plaintiffs-appellants Mary and Louis Villasenor. Lumen leased equipment and purchased materials from defendant-appellee Region Management & Leasing, Inc. ("Region Management").
 
 
 8
 Lumen began work on the project in September, 1982. The following spring, Region Management filed claims with Valparaiso for amounts allegedly owing from Lumen. In response, Valparaiso withheld payments due to Brant, and Brant in turn withheld payments from Lumen. After settlement negotiations proved fruitless, Brant filed an interpleader action in the Lake Superior Court sitting in East Chicago, Indiana on June 17, 1983. (The case has since been transferred to the Jasper Superior Court). Subsequently, Brant notified Lumen that its performance on the project was not in compliance with the subcontractor agreement.
 
 
 9
 Relations between the parties continued to worsen and, in August 1983, Brant ordered Lumen to cease work on the project. A week later, Lumen--who had not yet responded to Brant's interpleader complaint--filed a second state court suit in Porter Superior Court naming Brant as a defendant. (The suit was dismissed without prejudice on October 12, 1983). In addition, Lumen filed claims against Brant with Valparaiso. Meanwhile, Region Management and defendant-appellee United States Fidelity & Guarantee Company ("Fidelity") filed various claims, counterclaims, and cross-claims in the original interpleader suit.
 
 
 10
 Lumen finally responded to Brant's complaint for interpleader on November 7, 1983. On that date, Lumen filed its answers to the claims raised by Brant, Region Management, and Fidelity and also filed its "Counterclaim, Cross-Claim and Third-Party Complaint." In the latter pleading, Lumen asserted affirmative claims for relief based on alleged violations of 42 U.S.C. Secs. 1981, 1983, 1985, 1986, and 2000d (1982) and various state statutory and common law theories. By a virtually identical document filed in the district court on the same day, Lumen initiated the instant federal action.[1]
 
 
 11
 The defendants in the federal case filed motions to dismiss based, first, on the pendency of related state court proceedings and, second, on alleged deficiencies in the complaint. In an opinion dated March 22, 1985, the district court dismissed the case without prejudice. Noting that the plaintiffs' civil rights claims arose out of a contractual dispute, the court found that it would be impossible to decide the federal claims without some resolution of the state law issues. Rather than engage in piecemeal adjudication, the court found that the doctrine of Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), counseled in favor of a dismissal. In closing, the district court observed that dismissal would not burden the parties since the federal court litigation had "not moved forward substantially." Due to its disposition of the Colorado River issue, the court did not decide whether the complaint should also be dismissed for failure to state a claim.
 
 II
 
 12
 Lawyers may institute duplicative suits for any number of reasons, few of which tend to inspire judicial admiration. "Reactive" litigation--suits filed by one who is a defendant in prior proceedings based upon the same factual controversy, see Vestal, Reactive Litigation, 47 Iowa L.Rev. 11 (1961)--may be motivated by a desire to delay the progress of the case; to impose travel burdens on one's adversary; to take advantage of procedural opportunities available in only one forum; to obtain the supposed advantages of being a plaintiff; to avoid perceived prejudice in the original forum; or to benefit from perceived prejudice in the second forum. Note, Federal Court Stays and Dismissals in Deference to Parallel State Court Proceedings: The Impact of Colorado River, 44 U.Chi.L.Rev. 641, 643-44 (1977). Motivation aside, the extent to which these tactical considerations affect the outcome of cases is open to question.
 
 
 13
 When a case proceeds on parallel tracks in state and federal court, the threat to efficient adjudication is self-evident. But judicial economy is not the only value that is placed in jeopardy. The legitimacy of the court system in the eyes of the public and fairness to the individual litigants also are endangered by duplicative suits that are the product of gamesmanship or that result in conflicting adjudications.[2] Cf. R. Pound, The Causes of Popular Dissatisfaction with the Administration of Justice (Address of Aug. 29, 1906 to the American Bar Association), reprinted in 35 F.R.D. 273 (1964).
 
 
 14
 Nevertheless, a federal court cannot lightly abjure its responsibility to assert jurisdiction, at least when the alternative is relegating the federal plaintiff to his remedies in state court. In Colorado River, the Supreme Court confined the authority to "exceptional circumstances," emphasizing "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." Id., 424 U.S. at 817, 96 S.Ct. at 1243. The Court declared that, in deciding whether to defer to the concurrent jurisdiction of a state court, a district court must consider such factors as (1) whether the state court has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the desirability of avoiding piecemeal litigation, and (4) the order in which jurisdiction was obtained by the concurrent forums. "No one factor is necessarily determinative," the Court cautioned. "Only the clearest of justifications will warrant dismissal." Id. at 818-19, 96 S.Ct. at 1247. In the case before it, the Court upheld the district court's order of dismissal, placing heavy reliance on the McCarran Amendment's policy of avoiding piecemeal adjudication of water rights in a river system. Id. at 819, 96 S.Ct. at 1247.
 
 
 15
 In subsequent cases, the Supreme Court has identified at least four additional factors to be weighed in the balance: (1) the source of governing law, state or federal, Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 23-26, 103 S.Ct. 927, 941-942, 74 L.Ed.2d 765 (1983); (2) the adequacy of the state court action to protect the federal plaintiff's rights, id. at 26-28, 103 S.Ct. at 942-943; (3) the relative progress of the state and federal proceedings, id. at 21-23, 103 S.Ct. at 939-941; Arizona v. San Carlos Apache Tribe, 463 U.S. 545, 570, 103 S.Ct. 3201, 3215, 77 L.Ed.2d 837 (1984); and (4) the presence or absence of concurrent jurisdiction, Will v. Calvert Fire Ins. Co., 437 U.S. 655, 666, 98 S.Ct. 2552, 2559, 57 L.Ed.2d 504 (1978). In addition, this Court of Appeals has given weight to such factors as the availability of removal, Microsoftware Computer Systems, Inc. v. Ontel Corp., 686 F.2d 531, 537 (7th Cir.1982), and the vexatious or contrived nature of the federal claim, Calvert Fire Ins. Co. v. American Mutual Reinsurance Co., 600 F.2d 1228, 1234 (7th Cir.1979), noted with approval in Moses H. Cone Hospital, 460 U.S. at 17 n. 20, 103 S.Ct. at 938 n. 20.
 
 III
 
 16
 The only question on appeal is whether the district court abused its discretion in dismissing the case in deference to a parallel state court proceeding. Illinois Bell Telephone Co. v. Illinois Commerce Comm'n, 740 F.2d 566, 569 (7th Cir.1984). We consider first whether abstention was proper and second whether dismissal was the appropriate remedy.
 
 
 17
 The appellants argue that abstention was not proper because the federal complaint involved parties and claims not before the state court. Neither Mary and Louis Villasenor, plaintiffs below, nor Cole, a defendant below, are parties to the state court action. Therefore, the appellants maintain, the federal court is the only forum which can furnish complete relief.
 
 
 18
 This argument is flawed in several respects. First, while it is true that additional claims are made in the federal case, the opposite is also true; all the various claims of Brant, Region Management, and Fidelity are made only in the state court action. In fact, the state case is a good deal more comprehensive than the federal case.
 
 
 19
 Second, the district court in this case could reasonably have concluded that all claims--including those involving the Villasenors and Cole--were likely to be finally determined in the state court action. The only apparent basis for the Villasenors' claim is their status as the sole shareholders and owners of Lumen. Their interest in the outcome of the law suit is the same as that of their company. See Canady v. Koch, 608 F.Supp. 1460, 1475 (D.C.N.Y.) ("Where the interests of the plaintiffs in each of the suits are congruent, Colorado River abstention may be appropriate notwithstanding the nonidentity of the parties."), aff'd sub nom. Canady v. Valentin, 768 F.2d 501 (2d Cir.1985). As to Cole, its liability appears to be premised solely on its status as Valparaiso's agent. In analyzing whether a dismissal or stay will further the interest in avoiding piecemeal litigation, we look not for formal symmetry between the two actions, but for a substantial likelihood that the state litigation will dispose of all claims presented in the federal case. See Arizona v. San Carlos Apache Tribe, 463 U.S. at 567, 103 S.Ct. at 3213; Board of Education v. Bosworth, 713 F.2d 1316, 1322 (7th Cir.1983). If the rule were otherwise, the Colorado River doctrine could be entirely avoided by the simple expedient of naming additional parties. While Colorado River is considerably more limited in scope than the doctrines of res judicata and collateral estoppel, like them its impact cannot be obliterated by the stroke of a pen. Cf. 1B Moore's Federal Practice p 0.411 (1984).
 
 
 20
 The appellants' reliance on Crawley v. Hamilton County Commissioners, 744 F.2d 28 (6th Cir.1984), is misplaced. In Crawley, a class of prisoners filed a state suit against Cincinnati officials challenging the conditions of their confinement. Several years later, while the state case was pending, the city turned over control of the prison to Hamilton County. Subsequently, the prisoners filed a federal suit against Hamilton County officials. The district court abstained on the basis of Colorado River and the court of appeals, finding that the two agencies were not parallel, reversed. Id. at 31.
 
 
 21
 In Crawley, there was little to be gained in judicial economy by dismissing or staying the federal suit. Since the two cases involved different defendants and different time periods the state proceeding was unlikely to adjudicate any questions involved in the federal case. Thus, there was "no danger of piecemeal litigation." Id.
 
 
 22
 In the present case, by contrast, one can predict with some confidence that the state court litigation will probably eliminate the need for any further proceedings in federal court. Principles of res judicata can be expected to operate in full force, particularly in light of Lumen's duplicate pleadings. In short, the similarity between the two cases is sufficient to justify the conclusion that the "state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issue between the parties." Moses H. Cone Hospital, 460 U.S. at 28, 103 S.Ct. at 943.
 
 
 23
 Third, there is no reason in theory why the Villasenors and Cole could not be joined as parties in the state case. Early on in the litigation, Region Management brought in Fidelity and Valparaiso by third-party complaint, so the procedure clearly is available. The appellants, however, contend that they may no longer join additional parties, as evidenced by a June 17, 1985 order of the Jasper Superior Court denying Lumen's motion to join Cole.
 
 
 24
 If Lumen can no longer bring additional parties into the state case, it has only itself to blame. At the time of the state court's ruling, the case was two years old, substantial discovery had been completed, and several hearings had been held. The state court cannot be faulted for seeking to avoid the delay accompanying joinder of additional parties. And the purposes of the Colorado River doctrine would scarcely be served if we now revived the federal suit to enable the appellants to circumvent the rulings of the Jasper Superior Court.
 
 
 25
 We are more troubled by the appellants' argument that the nature of their federal claims precludes the application of Colorado River. Civil rights complaints indeed command special protection from the federal courts. See, e.g., Monroe v. Pape, 365 U.S. 167, 180, 81 S.Ct. 473, 480, 5 L.Ed.2d 492 (1961), overruled on other grounds, Monell v. Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).
 
 
 26
 The present action, however, presents a compelling case for deference to the state court despite the presence of federal civil rights claims. Having examined the various pleadings filed in state and federal court, we agree with the district court that a decision on the civil rights claims cannot be had until the underlying contractual dispute is resolved. Indeed, the theory of the appellants' complaint appears to be that, because of Lumen's status as a minority business enterprise, the breaches of contract committed by the defendants constituted federal civil rights violations.[3] In order to determine the merits of these claims, it will be necessary to sort out the contractual rights of the parties. Since the entire constellation of contractual claims is presented only in the state court proceeding and is governed by state law, the state court is in a far superior position to perform this task. See Canady v. Valentin, 768 F.2d 501, 503 (2d Cir.1985).
 
 
 27
 Moreover, the state court proceeding has progressed considerably further than the federal case, which the district court noted had "not moved forward substantially." In their briefs and at oral argument, the parties informed us that dates for closing discovery and submitting pretrial orders have been set for early 1986.[4] Several hearings have been held as well as a pre-trial conference. A number of rulings have been issued by the court, including denials of Lumen's motions for partial summary judgment and for a stay. Trial is scheduled for April 1986 (secondary setting) or January 1987 (primary setting). Of course, the state case was also filed first, nearly five months before Lumen released its double-barreled charge.
 
 
 28
 The appellants maintain that, if only one court is to decide the entire controversy, it should be the federal court. But that is not the question. The Jasper Superior Court has decided to proceed to judgment and we have no power to stay its proceedings for purposes of judicial economy. As the Supreme Court stated in San Carlos Apache Tribe, "Although adjudication of [the parties'] rights in federal court instead might in the abstract be practical, and even wise, it will neither be practical nor wise as long as it creates the possibility of duplicative litigation, tension and controversy between the federal and state forums, hurried and pressured decisionmaking, and confusion over the disposition of property rights." 463 U.S. at 569, 103 S.Ct. at 3214.
 
 
 29
 In San Carlos Apache Tribe, the Supreme Court found the exceptional circumstances necessary to support a Colorado River stay despite the "powerful federal interest" in safeguarding Indian water rights from state encroachment. 463 U.S. at 571, 103 S.Ct. at 3216. Similarly, in this case, the presence of federal claims under sections 1981, 1983, 1985, 1986, and 2000d is an important factor to be weighed in the balance, but it does not pose an absolute bar. See, e.g., Holmes v. Chicago Transit Auth., 505 F.Supp. 877, 879-80 (N.D.Ill.1981) (deferring to concurrent state proceeding in action under 42 U.S.C. section 1983). But cf. Tovar v. Billmeyer, 609 F.2d 1291, 1293 (9th Cir.1980) (reserving question of whether deference ever appropriate in section 1983 cases).
 
 
 30
 The appellants have expressed some doubt as to whether their claims will be fairly adjudicated in the state court, but we cannot share their concern. "State courts, as much as federal courts, have a solemn obligation to follow federal law." San Carlos Apache Tribe, 463 U.S. at 571, 103 S.Ct. 3216. We decline to presume that the Indiana courts, which have concurrent jurisdiction over Lumen's claims, will not discharge this obligation faithfully. Moreover, in the unlikely event that the state court action proves inadequate to protect the parties' federal rights, ordinary principles of res judicata and collateral estoppel would not prevent them from bringing their claims back before a federal court. Allen v. McCurry, 449 U.S. 90, 101, 101 S.Ct. 411, 418, 66 L.Ed.2d 308 (1980). "Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." Montana v. United States, 440 U.S. 147, 164 n. 11, 99 S.Ct. 970, 979 n. 11, 59 L.Ed.2d 210 (1979).
 
 
 31
 Finally, we address ourselves to the propriety of the district court's order of dismissal without prejudice. Although Colorado River itself involved an order of dismissal, the Supreme Court has expressly reserved the question of whether a stay or dismissal without prejudice is the preferred course. See San Carlos Apache Tribe, 463 U.S. at 570 n. 21, 103 S.Ct. at 3215 n. 21. This Court, however, has consistently held that the proper procedure is to stay. A dismissal, even without prejudice, creates a risk that the federal plaintiff will be time-barred from reinstating his federal suit if the state proceeding does not result in a final decision on the merits. Bosworth, 713 F.2d at 1322; Evans Transp. Co. v. Scullin Steel Co., 693 F.2d 715, 717-18 (7th Cir.1982). A stay, by contrast, permits the federal court to retain jurisdiction in case the state court action does not meet its anticipated end. A stay has the additional advantage of bringing the case back before the same federal judge if a determination is needed as to the preclusive effects of the state judgment or decisions. For these reasons, we reaffirm this court's decisions holding that a stay, not a dismissal without prejudice, is the appropriate procedural mechanism for a district court to employ in deferring to a parallel state court proceeding under the Colorado River doctrine.
 
 
 32
 The district court's judgment is modified to a stay and affirmed as so modified.
 
 
 
 *
 The Honorable Hubert L. Will, Senior District Judge of the Northern District of Illinois, is sitting by designation
 
 
 [1]
 The only differences between the two documents are in their headings, a jury demand contained only in the state court pleading, and a jurisdictional statement contained only in the federal version. Through the wonders of word processing, the documents even contain identical typographical errors. Compare Counterclaim, Cross-Claim, and Third-Party Complaint, p 7, Appellee's Jt.App. at 30 (state case), with Complaint, p 7, Appellee's Jt.App. at 44 (federal case) (should read "August, 1983")
 
 
 [2]
 While the doctrine of res judicata largely obviates the risk of conflicting final dispositions on the merits, a significant risk of conflict attends interlocutory rulings that are not ordinarily entitled to preclusive effect. See 1B Moore's Federal Practice p 0.441 (1984). To take a fairly pedestrian example, the state and federal courts may issue contradictory orders on discovery matters. This single, simple conflict, on matters ordinarily within the trial courts' broad discretion, leads ineluctably to a "rush to judgment," with each side attempting to push forward the litigation in the forum ruling in its favor on the preliminary matter. See Microsoftware Computer Systems, Inc. v. Ontel Corp., 686 F.2d 531, 538 (7th Cir.1982). In the end, the forum that loses the race will have engaged in a "grand waste of efforts." Id
 Of course, the consequences for the appearance and actuality of justice are even graver when the two courts differ on questions going to the merits, such as motions to dismiss, motions for summary judgment, motions to strike, motions for joinder or severance, or motions for a preliminary injunction.
 
 
 [3]
 See Moses H. Cone Hospital, 460 U.S. at 23 n. 29, 103 S.Ct. at 941 n. 29 (Colorado River Court relied upon fact that, while federal questions were presented, "the bulk of the litigation would necessarily revolve around the state-law water rights"). The complaint states in pertinent part that:
 This litigation is the result of occurrences involving the relationship of Lumen as the intended third party minority beneficiary under the policy and goal of said "Article IV of the Grant" of the Valparaiso-Brant Contract incorporating Article IV, of the regulations of EPA for the management of the grant and of the responsibilities and duties imposed upon the City of Valparaiso as Grantee, Cole & Associates, Inc., as Consulting Firm, and Brant Construction Company, Inc., as Prime Contractor.
 Complaint, p 3, Appellee's Jt.App. at 38.
 It could be maintained that at the heart of the state-law issues lies a federal issue--the application of EPA regulations regarding the hiring of minority business enterprises. See Grants for Construction of Treatment Works, Policy for Increased Use of Minority Consultants and Construction Contractors, 43 Fed.Reg. 60220 (1978). In this respect, we note that the enabling legislation for the EPA grant program, the Clean Water Act of 1977 (codified at 33 U.S.C. Secs. 1251 et seq.), itself expresses an affirmative congressional policy favoring "comprehensive solutions," primary state management responsibility, and prevention of "needless duplication and unnecessary delays at all levels of government." 33 U.S.C. Sec. 1251(b), (f), (g). Thus, our decision is consistent with the congressional policy, particularly "the strong current of federalism in the Clean Water Act." District of Columbia v. Schramm, 631 F.2d 854, 863 (D.C.Cir.1980).
 
 
 [4]
 After the briefs on this appeal were filed, the appellants filed a motion to strike portions of the appellee's briefs and joint appendix. The motion is directed principally at copies of state court pleadings and orders not in the record of the district court
 We deny the motion. Because judicial efficiency is the paramount concern under the Colorado River doctrine, it is appropriate for the reviewing court to look at the total situation as it stands at the time of appeal; we need not restrict ourselves to the materials before the district court. Illinois Bell, 740 F.2d at 570; see also Bosworth, 713 F.2d at 1321-22; Evans Transportation Co. v. Scullin Steel Co., 693 F.2d 715, 719-20 (7th Cir.1982). It was perhaps with this rule in mind that the appellants included extensive references to the state court proceedings in their own briefs and appendix. In any event, the official record of the parallel state case is a proper object for judicial notice.