TELECOMMUNICATIONS OF INDIANA, INC., an Indiana corporation; M & L Unlimited, Inc., an Indiana corporation; Ellen K. Leslie; James G. Leslie; Charlotte A. Maxwell; and Steven R. Maxwell, Plaintiffs,

v.

WESTEL SERVICE CORPORATION, a California corporation; and Roger Behrstock, Defendants.

Civ. No. F 86–393.

United States District Court, N.D. Indiana, Fort Wayne Division.

June 30, 1987.

James P. Fenton, Dennis C. Becker, Barrett & McNagny, Fort Wayne, Ind., for plaintiffs.

Edward L. Murphy, Jr., Livingston, Dildine, Haynie & Yoder, Fort Wayne, Ind., for defendants.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on defendants' motion to dismiss or, in the alternative, to stay. For the reasons which follow, the motion will be denied.

### I. Background

Defendant Westel Service Corporation (Westel) is a California corporation whose principal place of business is located in Los Angeles. Defendant Roger Behrstock (Behrstock) is its chairman. Westel is primarily engaged in repairing, remanufacturing, and refurbishing telephones in the western region of the United States.

In 1986, Westel embarked on a program to expand its business by acquiring other similar businesses in the midwest and southeast areas of the country. In connection with this effort, Westel contacted plaintiff Telecommunication of Indiana, Inc. (Telecommunication), a telephone repair company located in the State of Indiana.

On February 13, 1986, Westel entered into a written option agreement (Option Agreement) with Telecommunication to acquire Telecommunication's assets. At that time, plaintiffs Ellen Leslie, James Leslie, Charlotte Maxwell, and Steven Maxwell were the principal officers and sharehold-

ers of Telecommunication. Unless otherwise indicated, Telecommunication and these principal officers are hereinafter referred to as the "Indiana parties." Westel paid the Indiana parties $25,000.00 in consideration for the option. The Option Agreement was to stay in effect until June 30, 1986. It specifically stated that Indiana law was to control as to all matters concerning the Option Agreement.

After entering into the Option Agreement, Westel and Behrstock contacted Robert Kopple, Stanley Glickman, Jerry Blum, and K & G Financial, Inc. (hereinafter collectively referred to as the "California parties"), for the purpose of determining whether they would be interested in participating in the financing of Westel's acquisition of Telecommunication. In connection with these communications, Behrstock disclosed the specific terms and conditions of the Option Agreement and Westel's future plans. Additionally, the California parties were introduced to Ellen Leslie and financial information was provided to them.

On or about June 26, 1986, Ellen Leslie informed Behrstock that she did not wish to become involved with the California parties and suggested that the purchase agreement be restructured. On June 27, 1986, Westel and Behrstock allegedly entered into an oral agreement with the Indiana parties to acquire the assets of Telecommunication (Acquisition Agreement).

On or about June 29, 1986, Behrstock advised Kopple that the acquisition of Telecommunication had been restructured and that the California parties would not be involved. Behrstock also disclosed the terms and conditions of the Acquisition Agreement to Kopple.

On or about June 30, 1986, Ellen Leslie advised Behrstock not to travel to Indiana to consummate the Acquisition Agreement. Rather, she told him that she intended to travel to Los Angeles within the next few days to discuss and sign the Acquisition Agreement.

Without informing Westel and Behrstock, the California parties had entered into

negotiations with the Indiana parties to acquire the assets of Telecommunication prior to this date. On or about June 30, 1986, Ellen Leslie contacted Behrstock to inform him that the Indiana parties would not sell the assets of Telecommunication to him. The next day, Ellen Leslie traveled to Los Angeles to execute an agreement with the California parties for the acquisition of Telecommunication. Following the acquisition of Telecommunication by the California parties, they founded a new corporation, National Telecommunications of Indiana, Inc. (National).

## II. Procedural History

Two lawsuits have arisen out of these events. Westel and Behrstock sued both the Indiana parties and the California parties in Los Angeles Superior Court on September 3, 1986. The California complaint is in eight counts. Three counts concern the Indiana parties while the remaining five concern the California parties. The complaint seeks compensatory and punitive damages on theories of breach of contract, fraud and deceit, interference with contractual relations, breach of fiduciary duty, and trade libel.

The instant suit was filed by the Indiana parties against Westel and Behrstock on November 3, 1986. Counts I and II seek compensatory damages for breach of the Option Agreement and intentional interference with contractual relations. Counts III and IV are declaratory judgment actions regarding the parties' rights under the Option Agreement and the Acquisition Agreement, and the use of trade secrets revealed during the negotiations between the parties.

## III. Issues

Westel and Behrstock filed the motion under consideration on March 20, 1987. It proceeds on two fronts. First, they argue that this case should be stayed due to the pendency of the parallel California action. Second, they contend that the suit should be dismissed pursuant to Rules 12(b)(7) and 19(a) of the Federal Rules of Civil Procedure for failure to join a necessary party, being National Telecommunications of Indiana, Inc., the corporation formed following the California parties' purchase of Telecommunication. Neither argument has merit.

### A. Motion to Stay

The starting point for determining the propriety of staying the instant litigation in light of the parallel California suit is *Colorado River Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). That case noted that abstention from the exercise of jurisdiction for the traditional reasons of state-federal comity or the avoidance of constitutional decisions is

> "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest."

*Id.* at 813, 96 S.Ct. at 1244 (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959)). Despite the extremely limited circumstances noted above in which the Court found abstention to be proper, it nonetheless created another, even narrower, exception to the exercise of jurisdiction: "considerations of '[w]ise judicial administration.'" *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)).

It is this last exception which Westel and Behrstock seek to have applied in this case. Given the extremely narrow application of the "wise judicial administration" exception, they face a considerable burden in this motion.

Having set out the scope of the exception, *Colorado River* lists the relevant factors to be applied, noting that no one factor is necessarily determinative, and the emphasis given to each factor may vary according to the circumstances of the case. The factors include: (1) the timing of the respective suits; (2) convenience of the parties; and (3) the desirability of avoiding

piecemeal litigation. *Id.* at 818–19, 96 S.Ct. at 1246–47. Other factors have been noted subsequently, including the relative progress of the parallel actions and the presence of extensive rights governed by state law. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983).

In a series of cases, the Seventh Circuit has regularly endorsed the *Colorado River-Mercury Construction* formulation, most recently in *Employers Insurance of Wausau v. Shell Oil Co.*, 820 F.2d 898 (7th Cir.1987). *See Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691 (7th Cir. 1985); *Bd. of Educ. of Valley View v. Bosworth*, 713 F.2d 1316 (7th Cir.1983); *Evans Transp. Co. v. Scullin Steel Co.*, 693 F.2d 715 (7th Cir.1982); *Microsoftware Computer Systems v. Ontel Corp.*, 686 F.2d 531 (7th Cir.1982). In these cases, the Seventh Circuit has refined some of the existing factors and introduced others. For example, in *Lumen*, the court deemed important the availability of removal and the contrived nature of the federal claim. *Id.* at 694. In holding that a stay was appropriate in *Lumen*, the court was only momentarily sidetracked by the fact that the parties were not identical in both actions and that substantial federal civil rights claims were at issue. Regarding this latter issue, the court determined that the contractual claims raised in the state action, absent in the federal action, had to be decided before the civil rights aspects could be resolved. It therefore made more sense to stay the federal action and allow the more comprehensive state case to proceed. Other persuasive circumstances included the significant progress already made in the state action, due in part to its having been filed five months before the federal action. *Id.* at 696–97.

While cases have made clear that the importance of all these factors will vary with the particular case, the analysis in *Lumen* makes clear that the Seventh Circuit considers the relative progress of the parallel actions to carry greater than average weight. In *Bosworth*, for example, two state actions paralleled a federal action. One of the state cases had progress-

ed to the point where a consent decree had disposed of the issues raised therein, while it appeared that a state court appellate ruling would soon dispose of the remaining state case. The federal action was consequently stayed since the parallel issues it presented would shortly become moot in all likelihood. *Bosworth*, 713 F.2d at 1321–22. This result is consistent with the *Mercury Construction* admonition that courts should avoid a mechanistic approach in weighing timing considerations:

> [The priority factor], as with the other *Colorado River* factors, is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand. Thus, priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.

460 U.S. at 21, 103 S.Ct. at 940. In *Mercury Construction*, the federal suit had made significantly greater progress than the earlier filed state suit. Consequently, the Court held that the district court had abused its discretion by granting a stay of the federal action. *Id.* at 29, 103 S.Ct. at 944.

The instant case is in a similar posture, and the court sees no reason why, after weighing all relevant factors, it should not proceed with this case. The relative progress of the parallel actions herein takes on special significance in this case. The two month advantage of the California suit disappears in the face of uncontradicted assertions by the Indiana parties that, due to a clogged docket, the earliest date that the California action will be tried is some time in 1990 or 1991. On the other hand, in addition to resolving discovery disputes and conducting a hearing on the motion now under consideration following full briefing, substantial progress has been made in this case, including a scheduled trial date of December 7, 1987. Aside from the court's strong belief that no litigant in any court should have to wait four years for a trial date, the relative progress of these parallel actions, both to date and what is reasonably likely in the

future, clearly favors denial of Westel and Behrstock's motion to stay.

Other factors fail to dissuade the court from this view. Among the remaining factors to be considered, the one most frequently cited is the desire to avoid piecemeal litigation. This factor is only marginally applicable in this case. Here, the Indiana parties have sued Westel and Behrstock for damages and declaratory relief. In the California action, Westel and Behrstock have sued both the Indiana parties and the California parties for damages. Only three of the eight counts in the California action involve the Indiana parties, however, and those issues would be resolved in this case. Thus, there is no issue of piecemeal litigation regarding the parties before this court: the rights of both sets of parties in this case will be determined completely in either action. Undoubtedly, if this case proceeds, there will be some duplication of proof in the remainder of the California action between Westel and Behrstock and the California parties in terms of developing the context which gave rise to the suit. This is very different from the situation presented in *Lumen*, however, wherein the federal civil rights action was stayed in favor of the comprehensive state action which included contractual claims whose consideration necessarily had to precede those same civil rights issues also raised in the state action. Rather, the instant case presents the same general factual context with separable events involving separable parties. Consequently, the duplication of effort will be minimal, and certainly is insufficient to overcome the "virtually unflagging obligation" of this court to exercise its jurisdiction. *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1236.

The source of the governing law is another factor which favors the denial of Westel and Behrstock's motion, although for slightly different reasons from the usual case. This factor usually turns on a consideration of whether the issues will be determined by state or federal law. Here, because of the language of the Option Agreement, there is no question that the governing law is that of Indiana (as opposed to California). No federal law is implicated. As a result, it is worth noting that this court, being located in Indiana, has had considerable experience construing Indiana law, certainly more than the Los Angeles Superior Court. This fact, while not of overriding importance, since there has been no suggestion that the California court is incapable of construing Indiana law, nonetheless contributes to the already considerable burden of Westel and Behrstock in their motion.

The remaining factors, to the extent they are applicable, fall in favor of this court proceeding with the case. The state court has not assumed jurisdiction over any property. The relative convenience of the forum cuts about equally. Some parties are going to have to travel regardless of the forum in which the case is tried; it is no more burdensome for Westel and Behrstock to appear in Indiana as it would be for the Indiana parties to appear in California. Finally, there has been no showing that this action is of a "vexatious or contrived nature." *Lumen*, 780 F.2d at 694. Other factors are either inconsequential or inapplicable.

Westel and Behrstock attempt to demonstrate that the stringent *Colorado River* standard does not apply in this case since the Indiana parties' complaint in this court includes a request for declaratory relief. This argument is not persuasive since the complaint also seeks damages. *See Bosworth, supra*, 713 F.2d at 1318 (complaint seeking both damages and declaratory relief subject to *Colorado River* standards). In addition, although the Seventh Circuit has not ruled directly on the question, at least one other circuit has held that the *Colorado River* standards apply in purely declaratory actions. *See Lumbermens Mut. Casualty Co. v. Connecticut Bank & Trust Co.*, 806 F.2d 411, 413 (2d Cir.1986).

Therefore, for all of the foregoing reasons, the motion to stay will be denied.

### IV. Motion to Dismiss

As an alternative to their motion to stay, Westel and Behrstock move for dismissal pursuant to Rules 12(b)(7) and 19(a), Fed.R. Civ.P. Rule 12(b)(7) authorizes a motion to

dismiss for failure to join a party under Rule 19. Provided that jurisdictional requirements present no barrier, Rule 19(a) requires the joinder of a party if

(1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject matter to the action and is so situated that the disposition of the action may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already a party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

The alleged missing party in this case is National, the successor corporation to Telecommunication formed after the California parties had purchased Telecommunication from the Indiana parties. The assets of Telecommunication are now owned and held by National.

Westel and Behrstock's theory behind this aspect of their motion is somewhat difficult to follow. In essence, they claim that since the assets of Telecommunication are now owned by National, it has "some interest" in the outcome of this litigation which seeks to determine the respective rights and obligations of the parties to this action. This assertion cannot be reconciled with Westel and Behrstock's position in its motion to stay. National is not a party in the California action, an action which Westel and Behrstock initiated. Nonetheless, they argue presently that the instant suit should be stayed since the issues herein duplicate the issues in the California suit. Why National is an indispensable party in one action but not the other is not entirely clear.

■ Moreover, an analysis of the relationship between the parties in this suit does not suggest that National is an indispensable party. The complaint seeks both damages and declaratory judgments. The damages are sought by the Indiana parties against Westel and Behrstock for breach of contract and intentional interference with contractual relations. Should the Indiana parties prevail in these counts, Westel and

Behrstock would be subject to damages. The converse, however, is not true: if the Indiana parties fail to prove these claims, they would not be exposed to any damage claim. As things now stand, their only exposure to damages is in the California suit which does not name National. As a result, National cannot be said to be an indispensable party. *Accord ComShare, Inc. v. Computer Complex, Inc.,* 338 F.Supp. 1229 (E.D.Mich.1971), *aff'd per curiam,* 458 F.2d 1341 (6th Cir.1972); *In re Four Corners Enterprises, Inc.,* 17 B.R. 156 (Bankr.M.D.Tenn.1982).

The first declaratory count seeks a declaration as to the rights and obligations of the parties under the Option Agreement and the Acquisition Agreement. National was not even in existence when these agreements were allegedly entered into, so it is difficult to see why they would be indispensable as to this count. The fact that it is the subsequent repository of Telecommunication's assets is likewise irrelevant since the availability of assets is not at issue in the declaratory judgment counts.

Similarly, National is irrelevant to the issues presented by the second declaratory count. The count seeks a declaration regarding the usage of trade secret information allegedly provided to Westel and Behrstock by the Indiana parties.

Therefore, there is no basis on which to find that National is an indispensable party at this point in the litigation. Accordingly, Westel and Behrstock's motion to dismiss will be denied.

### V. Conclusion

Therefore, for all of the foregoing reasons, Westel and Behrstock's motion is DENIED in its entirety.