In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-2237

JERRY ADKINS, *et al.*,

*Plaintiffs-Appellants*,

*v.*

VIM RECYCLING, INC., K.C. INDUSTRIES, LLC,
and KENNETH R. WILL,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:09-cv-00510—**Philip P. Simon**, *Chief Judge.*

ARGUED JANUARY 20, 2011—DECIDED MAY 3, 2011

Before RIPPLE and HAMILTON, *Circuit Judges*, and
MURPHY, *District Judge.*[*]

HAMILTON, *Circuit Judge.* This appeal presents questions
regarding the citizen-suit provisions in the federal Re-

---

[*] The Honorable G. Patrick Murphy of the Southern District
of Illinois, sitting by designation.

source Conservation and Recovery Act (RCRA), 42 U.S.C. § 6901 *et seq.*, including when a narrower government enforcement lawsuit may preclude a broader citizen suit, and how the citizen-suit provisions interact with the federalism doctrines of *Colorado River* and *Burford* abstention. The district court in this case relied on statutory provisions and the abstention doctrines to dismiss the plaintiffs' citizen suit under RCRA. We reverse and remand to allow the plaintiffs to pursue their citizen suit.

## I.  *Citizen Suits Under RCRA*

We consider here the relationships among three lawsuits: two state court actions filed by a state environmental agency and the federal citizen suit. The details of those cases will be easier to follow if we first sketch the relevant statutory provisions. The Resource Conservation and Recovery Act, commonly known as RCRA, enacted a broad range of policies and procedures to control disposal of solid and hazardous waste in the United States to protect public health and the environment. Like other federal environmental laws, RCRA provides for a complex partnership between federal and state authorities to develop and enforce regulatory standards.

Also like other federal environmental laws, RCRA does not give sole responsibility to federal and state environmental agencies and assume that they will enforce the law adequately. RCRA includes provisions for citizen suits in federal district courts to enforce the

law. The RCRA citizen-suit provision, 42 U.S.C. § 6972, lies at the center of this appeal. Subsection (a) provides the general authority to bring citizen suits and provides for jurisdiction in the federal district courts. Subsection (a)(1) provides for two distinct types of citizen suits— "violation" actions in subsection (a)(1)(A) and "endangerment" actions in subsection (a)(1)(B). The citizen suit in this appeal combines both violation and endangerment claims. The statute provides in relevant part:

Except as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf—

(1)(A) against any person (including (a) the United States, and (b) any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter; or

(B) against any person, including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent

and substantial endangerment to health or the environment. . . .

42 U.S.C. § 6972(a)(1).

The specific statutory issues in this case concern the exceptions in subsection (b), which require plaintiffs in citizen suits to give notice to the federal Environmental Protection Agency, the relevant state agency, and the alleged violator, and which prohibit a citizen suit if the EPA or the state agency commences and diligently prosecutes its own action to enforce RCRA. More specifically, subsection (b) provides with regard to "violation" claims:

(b) Actions prohibited

(1) No action may be commenced under subsection (a)(1)(A) of this section—

(A) prior to 60 days after the plaintiff has given notice of the violation to—

(i) the Administrator;

(ii) the State in which the alleged violation occurs; and

(iii) to any alleged violator of such permit, standard, regulation, condition, requirement, prohibition, or order,

except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of subchapter III of this chapter; or

(B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States or a State to require compliance with such permit, standard, regulation, condition, requirement, prohibition, or order.

In any action under subsection (a)(1)(A) of this section in a court of the United States, any person may intervene as a matter of right.

42 U.S.C. § 6972(b); see also *Hallstrom v. Tillamook County*, 493 U.S. 20, 31 (1989) (describing RCRA's notice and 60-day delay requirements as "mandatory conditions precedent to commencing suit under the RCRA citizen suit provision" and ordering dismissal of citizen suit that had been filed before waiting period ran, despite years of litigation resulting in final judgment ordering remediation).

In this case, we must apply these provisions to a citizen suit that was filed after appropriate notices were given to the federal EPA, the state environmental agency, and the alleged violators. The first and simplest issue is whether the plaintiffs could continue to pursue their citizen suit in federal court when the state agency filed a later enforcement action in state court. Our answer is yes. The second issue is whether the plaintiffs could file their federal citizen suit after the state agency had filed a much narrower enforcement action against the same alleged violators, and after the alleged violators persuaded the court not to allow the plaintiffs to intervene to broaden that state court enforcement action to assert the claims they then presented to the federal court. Our answer is also yes.

After resolving these statutory issues in favor of the plaintiffs, we turn to whether the *Colorado River* or *Burford* abstention doctrines justify dismissal or stay of this citizen suit. Our answer to that question is no, so that the plaintiffs are entitled to pursue the relief they seek from the federal district court. The district court may certainly coordinate its efforts with the state courts, and may use its sound discretion in doing so, but it must allow these plaintiffs to proceed with their case in the forum they have chosen and that Congress has authorized.

II. *The Parties, the VIM Site, and the Litigation History*

Defendants Kenneth R. Will, K.C. Industries, LLC, and VIM Recycling, Inc. (collectively "VIM") operate a solid waste dump in Elkhart, Indiana. Lead plaintiff William Adkins and other residents of the area brought this suit against VIM in federal district court under RCRA and added various state law claims. VIM's regulatory history and the nature of the three enforcement lawsuits are essential to our disposition of the questions presented.

We begin in late 1999, when the Indiana Department of Environmental Management ("IDEM") ordered VIM to remove several waste piles and to cease outdoor grinding of solid waste at a different location in Goshen, Indiana. Rather than stopping its activities, VIM moved its operation to nearby Elkhart, a move that would come to upset many Elkhart residents, including the plaintiffs here. By 2004, the Elkhart County Solid Waste Management District Board had received numerous complaints from families and businesses in VIM's vicinity.

When IDEM inspected VIM's Elkhart operations in August 2005 and January 2006, it found several ongoing air pollution and solid waste violations.

In an attempt to remedy some of VIM's many regulatory violations, IDEM and VIM entered into an Agreed Order on January 16, 2007. Among other things, the Agreed Order required VIM to obtain the required permits for its activities, to stop taking so-called "C" grade waste to non-permitted facilities, to stop putting any unregulated waste on the berm at the VIM site, to confirm through sampling and analysis that the berm did not cause a threat to human health and the environment, to stop putting any waste onto VIM's "C" grade piles, and to remove the "C" grade waste by September 2008.[1]

_____

[1] The classification of VIM wastes into different grades was apparently specific to the VIM site. The differences are critical to understand the issues in this case regarding the scope of the different IDEM lawsuits and this citizen suit. As defined by IDEM, the particular "grades" of waste at the VIM site include "A" grade waste (trees, brush, recently live wood, and uncontaminated lumber, which is ground up and used for mulch), "B" grade waste (wood scraps containing laminated wood and plywood collected from area manufacturers that is ground up to make animal bedding), and "C" grade waste (formerly "B" grade waste that has degraded and is no longer suitable for making animal bedding). As near as we can tell, these designations were first adopted by IDEM and were incorporated into its 2007 Agreed Order with VIM (referring only to "C" grade waste). VIM embraced these designations, as shown by its quarterly reports to IDEM pursuant to the

(continued...)

The deadline came and went without compliance. When IDEM inspected VIM's Elkhart operation on October 2, 2008, it found that VIM had not removed the "C" grade waste as required by the Agreed Order. The next day, on October 3, 2008, IDEM filed suit in the Elkhart Circuit Court to enforce the Agreed Order, particularly with regard to VIM's failure to remove the "C" grade waste at the site. (We refer to this 2008 suit as the first IDEM lawsuit.)

Several Elkhart area residents who would later become plaintiffs in this federal citizen suit first sought to intervene in that first IDEM lawsuit. The intervenors also sought to expand the scope of the complaint in the first IDEM lawsuit beyond the scope of the Agreed Order. The intervenors sought injunctive relief that would have required VIM to cease *all* operations pertaining to the illegal disposal of *all* solid waste at the VIM site (not just "C" grade waste), and to remediate the

---

[1] (...continued)

Agreed Order. 2008 IDEM Complaint Exs. C-E (referring to "A-material," "B-material," and "C-material"). The federal EPA also adopted these definitions in its 2009 Administrative Consent Order regarding VIM's violations of the Clean Air Act. On appeal VIM attempts to retreat from these classifications by arguing that "A," "B," and "C" are geographic designations of various standing waste piles at the VIM site. The record reflects, however, and VIM concedes, that "A," "B," and "C" refer to different grades of waste as well as to different piles of waste. For our purposes, the relevant point is that they refer to different grades of waste.

facility to its condition before VIM took it over. The intervenors also sought damages through common law claims of nuisance, negligence, and trespass. VIM opposed the intevenors' motion to the extent that they raised claims extending beyond the scope of the Agreed Order. VIM argued that the intervenors' claims should be limited to the scope of the first IDEM lawsuit as it was originally filed. The state court agreed with VIM and asked VIM to draw up a proposed intervention order allowing that narrow intervention.

In response to this adverse ruling, the intervenors voluntarily withdrew all of their claims outside the scope of the first IDEM lawsuit. They chose instead to proceed in federal court under the RCRA citizen-suit provision to seek broader relief. As required by RCRA section 6972(b), the plaintiffs first sent a Notice of Intent to File a Complaint under RCRA to VIM, IDEM, and the EPA. During the required waiting period, neither the EPA nor IDEM filed a lawsuit (or intervened in or amended the first IDEM suit) to assert the plaintiffs' proposed claims against VIM. The plaintiffs then filed this action in the Northern District of Indiana on October 27, 2009.

In their federal complaint, the plaintiffs sought relief under both the "violation" and the "endangerment" provisions of RCRA. 42 U.S.C. §§ 6972(a)(1)(A) and (a)(1)(B). They also alleged common law claims of nuisance, trespass, negligence, negligence per se, and gross negligence. The detailed factual-basis allegations of the complaint stretch over 17 pages and 72 paragraphs.

Many of those allegations recount IDEM's attempts to regulate VIM's operation and thus focus on the "C" grade waste. Recognizing that those efforts culminated in the first IDEM lawsuit, the plaintiffs also made allegations based on the other types of waste at the site, particularly the "A," "B," "C&D" (construction and demolition) grades, and uncategorized waste. Specifically, the plaintiffs alleged:

146.  From July 2000 to the present date, Defendants have handled, transported, stored and processed "A" waste, "B" waste, "C" waste, C&D waste, wastewater treatment plant sludge, and other solid wastes at the VIM site.

147.  From July 2000 to the present date, Defendants have constructed berms with solid waste materials at the VIM site.

148.  From July 2000 to the present date, Plaintiffs have and continue to experience adverse health impacts, as well as fear for the safety of their persons and properties as a direct and proximate result of VIM's handling, storage, transporting and processing of solid waste at the VIM site.

149.  Plaintiffs observe plumes of smoke on a daily and continuous basis coming from internal and smoldering combustion of the various waste piles at the VIM site including the "A", "B", and "C" waste piles, and berms made of solid waste.

The plaintiffs took care to differentiate their federal claims from the claims the state asserted in the first IDEM lawsuit. They alleged:

164. IDEM's enforcement action seeks only to enforce the [Agreed Order or "AO"] of January 16, 2007 which required Defendants to remove or properly dispose of "C" waste that existed at the time of entry of the AO by September 30, 2008.

165. IDEM's enforcement action does not address "A" or "B" wastes accumulated before or after entry of the AO or "B" waste that turned to "C" waste after entry of the AO. Moreover, the AO does not require removal of berms made of solid waste, "A" or "B" wastes accumulated before or after entry of the AO, or "B" wastes that turned to "C" wastes after entry of the AO.

Thus, the plaintiffs' RCRA allegations are based in part on "C" grade waste, but they go beyond the "C" grade waste to include "A" and "B" waste. See Complaint ¶ 168. Among other violations, they allege that VIM was consolidating, disposing of, and causing combustion of wood and engineered wood waste (including "A," "B" and "C" grade waste), construction and demolition waste, and "other solid wastes" without cover; was operating a non-compliant solid waste disposal facility; was "open dumping" solid wastes at the site; and was "stor[ing], contain[ing], processing and/or dispos[ing] of solid waste at the VIM site in a manner that has and continues to: create a fire hazard, attract vectors, pollute air and water

resources, and cause other contamination." The plaintiffs also alleged that VIM violated several Indiana regulations that can be enforced under RCRA's "violation" provision. Pursuant to RCRA's "endangerment" provision, the plaintiffs alleged that VIM's handling, transport, processing, and disposal of "A," "B," and "C" grade solid waste and the berms of solid waste at the VIM site presented an imminent and substantial danger to health and the environment.

In the meantime, IDEM continued to inspect VIM's Elkhart operation, finding ongoing violations that culminated in a second IDEM lawsuit. On December 21, 2009, after the plaintiffs had served their RCRA notice, had waited out the requisite delay period, and had already filed this citizen suit in the federal district court, IDEM filed its second lawsuit in the Elkhart Superior Court. The second IDEM lawsuit alleged that, in violation of state statutes and regulations, VIM had caused or allowed the open dumping of "B" grade waste on its property and had stored, contained, processed, or disposed of "B" grade waste in a manner causing a threat to human health or the environment. IDEM sought a preliminary and permanent injunction "requiring VIM to immediately cease to cause or allow the deposit and/or dumping of contaminants and solid waste on the Site or any other unpermitted site," and requiring VIM to remove and properly dispose of all "B" grade waste at the site, to comply with all federal, state, and local laws in doing so, and to submit written documentation to IDEM within 45 days that all "B" grade waste had

been taken to a permitted solid waste management or processing facility.

Now fighting three separate lawsuits (the two IDEM suits in state courts and this citizen action in federal court), VIM moved to dismiss this federal lawsuit. VIM argued that the district court did not have federal subject matter jurisdiction under RCRA over the plaintiffs' "violation" and "endangerment" claims because IDEM was pursuing the same claims in state court that the plaintiffs' raised in this suit. VIM further argued that the district court should abstain from exercising its jurisdiction based on the abstention doctrines articulated by the Supreme Court in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), and *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). The district court granted VIM's motion, finding that it lacked jurisdiction over the RCRA violation claim and that it should abstain from exercising jurisdiction over all RCRA claims under *Burford* and *Colorado River*. The court then declined to exercise supplemental jurisdiction over the state law claims. The plaintiffs have appealed.

III. *Statutory Issues Under RCRA*

RCRA's "violation" provision permits any person to commence a lawsuit against any other person or entity "who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition or order which has become effective pursuant to [RCRA]." 42 U.S.C. § 6972(a)(1)(A). After notice is given, a citizen suit cannot be commenced "if the Administrator or State has

commenced and is diligently prosecuting a civil or
criminal action in a court of the United States or a State
to require compliance with such permit, standard, reg-
ulation, condition, requirement, prohibition, or order." 42
U.S.C. § 6972(b)(1)(B). VIM argues that both the first and
second IDEM lawsuits trigger RCRA's statutory bar
and prohibit the plaintiffs' RCRA "violation" claim.
We hold otherwise.[2]

A. *Subject Matter Jurisdiction*

The parties and the district court treated the statutory
bar issue as a question of subject matter jurisdiction. This

---

[2] RCRA's "endangerment" provision contains its own statutory
bar in 42 U.S.C. § 6972(b)(2), and VIM argued to the district
court that the plaintiffs' "endangerment" claim was barred
under that provision. However, the district court found that
the EPA had not taken any of the action specified in section
6972(b)(2)(B)(i)-(iv) and that those provisions did not apply.
Although the district court found that section 6972(b)(2)(C)(i)
could operate as a bar if the State had commenced its own
RCRA "endangerment" action, the parties failed to address
whether IDEM's suits could constitute such an action "under"
RCRA. Ultimately, the district court did not reach this
question because it found the that the *Colorado River* and *Burford*
abstention doctrines counseled against hearing the plaintiffs'
RCRA "endangerment" claim. Although we hold that the
district court's decision to abstain was an abuse of discretion,
VIM has not renewed on appeal any argument it may have
that the plaintiffs' "endangerment" claim was statutorily
preempted under section 6972(b)(2)(B) or (b)(2)(C).

was incorrect. In a series of recent cases under many different federal statutes, the Supreme Court has repeatedly reminded the lower courts of the narrow scope of truly jurisdictional rules and the broader category of ordinary "claims processing rules." "Jurisdiction" means nothing more and nothing less than "a court's adjudicatory authority." *Reed Elsevier, Inc. v. Muchnick*, ___ U.S. ___, ___, 130 S. Ct. 1237, 1243 (2010) (holding that requirement to register copyright before bringing suit was not jurisdictional), quoting *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004) (holding that time limit for creditors to file objections to discharge in bankruptcy was not jurisdictional). The jurisdictional category applies only to "'prescriptions delineating the classes of cases (subject matter jurisdiction) and the persons (personal jurisdiction)' implicating that authority." *Id.*, quoting *Kontrick*, 540 U.S. at 445.

The distinction is vital. Treating a rule as jurisdictional "alters the normal operation of our adversarial system" in which courts address the claims and arguments. *Henderson v. Shinseki*, ___ U.S. ___, ___, 131 S. Ct. 1197, 1202 (2011) (deadline for filing notice of appeal with Veterans Court is not jurisdictional). If a rule is genuinely jurisdictional, a federal court has an obligation to raise and decide the issue itself even if the parties do not. A jurisdictional question may be raised at any time, including for the first time on appeal, causing unfairness to the parties and wasting the efforts spent on the litigation to that point. *Id.* Congress can specify that a particular claims-processing rule is jurisdictional, but it is clear that the Supreme Court is not expanding the category

of jurisdictional rules without explicit indications from Congress that it intended such drastic results.

The RCRA prohibition on bringing a citizen suit when the EPA or a state agency "has commenced and is diligently prosecuting" an action to require compliance with the same permit, standard, or other requirement falls into the category of claims-processing rules. Congress could have made the prohibition expressly "jurisdictional," but neither the general federal question jurisdiction statute, 28 U.S.C. § 1331, nor RCRA's jurisdictional grant, 42 U.S.C. § 6972(a), specifies any threshold jurisdictional requirement. RCRA's limits on citizen suits appear in separate provisions that do not "speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." See *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982) (Title VII requirement for filing charge with EEOC did not limit jurisdiction); 42 U.S.C. §§ 6972(b)(1), (b)(2). "[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006) (Title VII requirement for number of employees is element of a claim but not a requirement for subject matter jurisdiction).[3]

---

[3] In *Hallstrom v. Tillamook County*, 493 U.S. 20, 31 (1989), the Supreme Court declined to decide whether RCRA's notice and 60-day delay requirements for citizen suits are jurisdictional. Under the analysis the Supreme Court has applied more recently to similar questions, the clear answer is that they are not.

The plaintiffs in this case have alleged colorable claims for relief directly under RCRA. Even if those claims are not successful, whether because of a statutory bar or for some other reason, they were substantial enough to give the district court subject matter jurisdiction over the case, including supplemental jurisdiction over the plaintiffs' state law claims. See, *e.g., Rabé v. United Air Lines, Inc.*, ___ F.3d ___, ___, 2011 WL 677946, at *2-3 (7th Cir. Feb. 28, 2011) (reversing dismissal of Title VII claim for lack of jurisdiction; whether international employee was covered by statute went to merits rather than jurisdiction), citing *Greater Chicago Combine and Center, Inc. v. City of Chicago*, 431 F.3d 1065, 1070 (7th Cir. 2005) (affirming summary judgment on merits of federal constitutional claims that raised substantial federal questions); *Gammon v. GC Services Ltd. Partnership*, 27 F.3d 1254, 1256 (7th Cir. 1994) (reversing dismissal for lack of subject matter jurisdiction where plaintiff alleged substantial federal claim).

Another factor that supports this treatment of the RCRA limit on citizen suits is the fact that the limit is not absolute. It has the potential to ebb and flow depending on whether the government agency is "diligently prosecuting" an earlier lawsuit. 42 U.S.C. §§ 6972(b)(1)(B), (b)(2)(B)(i), (b)(2)(C)(i). Subject matter jurisdiction, on the other hand, is usually thought of in binary terms. It either exists or it does not. It might disappear because of a change of circumstances, but it's hard to fit into the concept of subject matter jurisdiction the idea that the ability to pursue the citizen suit could disappear, return, and disappear again, depending on the govern-

ment agency's changing approach to its own enforcement action.

B.  *The Second IDEM Suit*

With subject matter jurisdiction secure, we treat VIM's motion as one to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Our review of Rule 12(b)(6) motions to dismiss is de novo. We construe the complaint in the light most favorable to the plaintiffs, accepting as true all well-pled facts alleged, taking judicial notice of matters within the public record, and drawing all reasonable inferences in the plaintiffs' favor. See *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997) (permitting courts to take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment).

Under this standard, we turn to VIM's statutory bar arguments. Because the issue is so straightforward, we address first the effect of the second IDEM suit, which was filed after the plaintiffs filed this RCRA citizen suit. The district court found that the plaintiffs' RCRA violation claim in their earlier citizen suit was barred by that second IDEM lawsuit under 42 U.S.C. § 6972(b)(1)(B). That conclusion is contrary to the plain language of subsection (b)(1)(B).

Subsection (b)(1)(B) says that a citizen's violation action may not "be commenced" if the EPA or state agency "has commenced and is diligently prosecuting

a civil or criminal action in a court of the United States or a State. . . ." The statute prohibits only *commencement* of a citizen suit, not the continued prosecution of such an action that has already been filed. It operates to prohibit commencement of a citizen suit only if the government "has commenced and is diligently prosecuting" its own action, and not, for example, if the government "*commences* and *begins* diligently prosecuting." The verb tenses make clear that subsection (b)(1)(B) bars a RCRA citizen suit for a RCRA violation only if the suit was "commenced" after the government "has commenced" a lawsuit, not if the citizen suit was filed first.

This conclusion follows our interpretation of the identical statutory language for citizen suits under the Clean Water Act (CWA) in *Friends of Milwaukee's Rivers v. Milwaukee Metropolitan Sewerage Dist.*, 382 F.3d 743 (7th Cir. 2004). Like RCRA, the CWA prohibits a citizen from commencing a citizen suit "if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State . . . ." 33 U.S.C. § 1365(b)(1)(B). In *Friends of Milwaukee's Rivers* we held that a state enforcement action filed mere hours after a CWA citizen suit was filed did not bar the citizen action. See 382 F.3d at 754-55. We explained that our holding was dictated by the "clear and unambiguous language" of the CWA's preemption provision. *Id*.; see also *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 618-19 (7th Cir. 1998) (defendant's argument that Illinois's preliminary and informal administrative acts were sufficient to bar a later-filed citizen suit could not override RCRA's plain statutory text that only an "action" has the barring effect); *Chesapeake Bay Founda-*

*tion v. American Recovery Co.*, 769 F.2d 207, 208-09 (4th Cir. 1985) (CWA citizen suit filed three hours before state agency suit was entitled to proceed based on plain language used in verb tenses). Given the identical language in RCRA in section § 6972(b)(1)(B) and the CWA in 33 U.S.C. § 1365(b)(1)(B), we see no reason to hold otherwise here.

The district court reached its different conclusion based on *River Village West, LLC v. Peoples Gas Light and Coke Co.*, 618 F. Supp. 2d 847 (N.D. Ill. 2008). The issue in that case was whether a citizen suit was precluded under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) § 113(h), 42 U.S.C. § 9613(h), which expressly limits federal courts' subject matter jurisdiction to bar legal challenges to a removal or remedial action by the EPA. The district court in *River Village West* relied upon CERCLA section 113(h) to use a later-filed suit to bar an earlier-filed citizen suit under RCRA. See 618 F. Supp. 2d at 852-53. CERCLA section 113(h) uses different language that does not include the temporal limits found in the RCRA and CWA on citizen suits. Accordingly, the analysis in *River Village West* could not extend to this case without some showing that CERCLA section 113(h) also applies here. Neither VIM nor the district court has offered a theory for doing so. Without approving or disapproving the analysis in *River Village West* on its own merits, its analysis does not support the decision to treat the second IDEM suit as a bar to this RCRA citizen suit. The later-filed second IDEM suit does not restrict the plaintiffs' ability to pursue this citizen suit.

C. *The First IDEM Suit*

We turn next to the effect of the first IDEM suit, which was filed before the plaintiffs filed their citizen suit. Under the terms of 42 U.S.C. § 6972(b)(1)(B), the earlier government action bars this suit if it was a suit "to require compliance with such permit, standard, regulation, condition, requirement, prohibition, or order," *i.e.*, if it sought to require compliance with the same requirements that the plaintiffs seek to enforce in this suit. If it was, then the plaintiffs' citizen suit is barred under RCRA. If it was not, then RCRA allows the two suits to proceed simultaneously. Based on a close examination of the lawsuits, including the state court's rejection of the plaintiffs' efforts to pursue their claims by intervening in the first IDEM suit, we conclude that RCRA allows the plaintiffs to pursue their claims that are beyond the scope of the first IDEM suit.

We look to the plaintiffs' federal complaint and we take judicial notice of matters within the public record: specifically, the 2007 Agreed Order between VIM and IDEM, IDEM's complaint in its first suit, court documents associated with the plaintiffs' intervention in the first IDEM suit, and documents from the second IDEM suit.[4]

---

[4] VIM moved that we take judicial notice of the docket in *Attorney General of the State of Indiana and Commissioner, Indiana Department of Environmental Management v. VIM Recycling, Inc.*, Cause No. 20D01-0912-CC-00619, currently pending in the Elkhart Superior Court, and *Jerry Adkins, et al. v. KC Industries, LLC, et al.*, Cause No. 20D01-1005-CT-00038, cur-

(continued...)

The first IDEM suit sought enforcement of the IDEM/VIM Agreed Order, which, in turn, dealt primarily with dumping, processing, and disposal of "C" grade waste and waste piles. See AO ¶¶ II(3), (4), (5), (6), (9). In this case, the plaintiffs allege RCRA violations that are based in part on VIM's dumping, processing, and disposal of "C" grade waste. See Complaint ¶ 168(a)-(e). To the extent that the plaintiffs' RCRA claims overlap with the claims IDEM asserted in its first suit with respect to the "C" grade waste, the district court found, and we agree, that they cannot be pursued in this citizen action because of 42 U.S.C. § 6972(b)(1)(B).

But to the extent that the plaintiffs' claims do not overlap with those asserted in the first IDEM suit, the plaintiffs' claims are not precluded under 42 U.S.C. § 6972(b)(1)(B). The plaintiffs' RCRA claims in this federal citizen suit also seek relief for "A" grade waste, "B" grade waste, and other types of solid waste that were not expressly addressed by IDEM's allegations in its first suit.

VIM argues in this federal suit, and the district court found, that IDEM's different grades of waste are not different at all but fall under the general umbrella of "solid waste." Following this logic, VIM would have us conclude that the first IDEM suit, which addressed only the "C" grade waste, actually encompassed the other

---

[4] (...continued)

rently pending in the Elkhart Superior Court. Its motion is granted.

types of waste as well, and its scope completely over-laps the violation claims in the plaintiffs' RCRA citizen suit.

Three aspects of the record undermine VIM's argument. First, when the plaintiffs attempted to intervene in IDEM's 2008 lawsuit, VIM successfully objected to their attempts to broaden the scope of that suit beyond the "C" grade waste to address the other solid wastes that VIM was dumping and processing at the Elkhart site. The state court sustained VIM's objection and prevented the plaintiffs from expanding the scope of the case beyond the allegations of IDEM's complaint to bring in their additional claims. If the plaintiffs' proposed claims had truly overlapped IDEM's allegations in their entirety, VIM's objection (and the court's ruling) would have been moot. Having convinced the state court to limit the case to IDEM's narrower "C" grade waste allegations, VIM cannot be permitted to take the opposite position in federal court and claim that there is no difference between the cases. This conclusion applies the familiar equitable principle of judicial estoppel: a party who prevails on one ground in a prior proceeding cannot turn around and deny that ground in a later proceeding. *E.g.*, *Butler v. Village of Round Lake Police Dep't*, 585 F.3d 1020, 1022-23 (7th Cir. 2009); *Levinson v. United States*, 969 F.2d 260, 264-65 (7th Cir. 1992). VIM is simply trying to have it both ways. We reject the tactic and conclude that IDEM's allegations in its 2008 lawsuit do not seek to require compliance with "such permit, standard, regulation, condition, requirement, prohibition or or-der" that the plaintiffs seek to enforce in their RCRA citizen suit.

Second, the plaintiffs' RCRA allegations in this case encompass "A" grade waste. "A" grade waste is regulated as a solid waste under RCRA but is not regulated by Indiana state law. See 329 Ind. Admin. Code § 11-3-1(7) (exempting "uncontaminated and untreated natural growth solid waste" from state solid waste regulations). All of IDEM's allegations in its first suit against VIM were brought under Indiana state law. IDEM brought no claims against VIM under RCRA. IDEM's first lawsuit and the plaintiffs' RCRA citizen suit simply cannot overlap with respect to "A" grade waste.

Third, it is clear beyond reasonable dispute that IDEM's first "C" grade waste lawsuit did not also encompass VIM's violations of Indiana law with regard to its treatment and handling of "B" grade waste. Just over a year after it filed its first lawsuit, IDEM filed its second lawsuit (discussed above) in which it sought an injunction to stop VIM from violating Indiana law in its dumping and processing of "B" grade waste. See 2009 IDEM Complaint ¶ 6(a)-(e). If IDEM's allegations in its first lawsuit regarding VIM's dumping and processing of "C" grade waste were indeed broad enough to cover all the solid waste at the site, as VIM now contends, then IDEM's second lawsuit would have been unnecessary. IDEM itself interprets VIM's treatment and handling of "C" grade waste and "B" grade waste as distinct violations of Indiana's solid waste regulations. We too conclude that plaintiffs' RCRA allegations about "B" grade waste and "C" grade waste do not overlap. For all three of these reasons, we conclude that 42 U.S.C. § 6972(b)(1)(B) does not bar the plaintiffs from

bringing this citizen suit seeking to enforce RCRA against VIM with respect to solid wastes other than the "C" grade wastes.[5]

Perhaps a more detailed factual record could reveal that, contrary to our reading of the procedural history of the various lawsuits against VIM, the different grades of waste are in fact properly regulated as undifferentiated solid waste. Perhaps, for instance, IDEM's decisions to file the first lawsuit in 2008 addressing the "C" grade waste and the second lawsuit in 2009 addressing the "B" grade waste had nothing to do with the grades of waste at all but were part of its overall enforcement strategy. These and other relevant issues may be properly addressed on remand with more information

---

[5] We are aware of only one other circuit court decision confronting the question whether a government suit addressing one contaminant at a site bars a RCRA citizen suit addressing a different contaminant at the same site. In *Francisco Sanchez v. Esso Standard Oil Co.*, 572 F.3d 1, 12 (1st Cir. 2009), the First Circuit held that the citizen suit in question was not barred under section 6972(b)(1)(B) in part because "the two complaints involve different contaminants." Several other factors may have influenced the ultimate conclusion in *Francisco Sanchez*, including the court's observation that "[t]he two complaints also allege distinct violations of [law]," and "the Commonwealth's RCRA action expressly implicates [the defendant] in a different capacity than the instant action." *Id*. at 12. The court also found that the government's suit was intended to protect the public generally, while the citizen suit dealt "with the potential contamination and clean-up of one particular property." *Id*. at 13.

than is available from the limited record on a motion to dismiss for failure to state a claim. Based on the existing record, however, including VIM's success in preventing the plaintiffs from raising their claims as intervenors in the first IDEM suit, section 6972(b)(1)(B) does not bar the plaintiffs' RCRA violation claim in this citizen suit.

IV. *Abstention Doctrines*

VIM also persuaded the district court to abstain from exercising its jurisdiction under the *Colorado River* and *Burford* abstention doctrines. We review the district court's decision to abstain under the *Colorado River* and *Burford* doctrines under an abuse of discretion standard. See *International College of Surgeons v. City of Chicago*, 153 F.3d 356, 360 (7th Cir. 1998). However, "there is little or no discretion . . . to abstain in a case that does not meet traditional abstention requirements, and that determination is a question of law." *Property & Casualty Insurance Ltd. v. Central National Ins. Co. of Omaha*, 936 F.2d 319, 321 (7th Cir. 1991). That description fits this case. We find that the district court abused its discretion, and we reverse.

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817. This duty to exercise jurisdiction rests on "the undisputed constitutional principle that Congress, *and not the Judiciary*, defines the scope of federal jurisdiction within the constitutionally permissible

bounds.*" New Orleans Public Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989) (emphasis added); see also *Cohens v. Virginia*, 19 U.S. 264, 404 (1821) (federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given").

Accordingly, a federal court's ability to abstain from exercising federal jurisdiction "is the exception, not the rule," and can be justified only in exceptional circumstances. *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992), quoting *Colorado River*, 424 U.S. at 813. As a general proposition, these exceptional circumstances exist "where denying a federal forum would clearly serve an important countervailing interest," such as "considerations of proper constitutional adjudication," "regard for federal-state relations," or "wise judicial administration." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) (internal quotation marks omitted).

Abstention doctrines are not intended, however, to alter policy choices that Congress itself considered and addressed. As the First Circuit recently explained in rejecting *Burford* abstention in a RCRA citizen suit, "Abstention is, at its core, a prudential mechanism that allows federal courts to take note of and weigh significant and potentially conflicting interests that were not—or could not have been—foreseen by Congress at the time that it granted jurisdiction for a given class of cases to the courts." *Chico Service Station, Inc. v. Sol Puerto Rico Ltd.*, 633 F.3d 20, 31 (1st Cir. 2011).

In section 6972 of RCRA, Congress specified the conditions under which a citizen suit could go forward and the conditions under which a government enforcement suit would bar a citizen suit. Those detailed provisions show that Congress intended to allow a properly filed citizen suit to go forward when the statutory conditions have been met. In other words, Congress has already "recognized and addressed the specific clash of interests at issue" under RCRA, and has already determined "the situations in which a state or federal agency's enforcement efforts will foreclose review of a citizen suit in federal court." *Chico Service Station*, 633 F.3d at 31.

Where a citizen suit has satisfied those conditions and is not statutorily barred, Congress has expressed its intent that the citizen suit should proceed. Use of a judge-made abstention doctrine to refuse to hear the case can easily amount to "an end run around RCRA" and is essentially an end-run around congressional will. See *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 619 (7th Cir. 1998) (rejecting *Burford* abstention in RCRA case), quoted in *Chico Service Station, Inc.*, 633 F.3d at 31 ("To abstain in situations other than those identified in the statute thus threatens an 'end run around RCRA,' and would substitute our judgment for that of Congress about the correct balance between respect for state administrative processes and the need for consistent and timely enforcement of RCRA.").

Here, the plaintiffs gave the notice required by section 6972(b)(1)(A) (the "violation" claim) and sec-

tion 6972(b)(2)(A) (the "endangerment" claim). Their suit was not barred by government action taken pursuant to section 6972(b)(1)(B) (the "violation" claim) or sections 6972(b)(2)(B) and (C) (the "endangerment" claim). The plaintiffs therefore have met the relevant conditions set by Congress to have their RCRA claims heard in federal court. As we explained in *PMC*, in language and reasoning that applies beyond only *Burford* abstention: "Congress has *specified* the conditions under which the pendency of other proceedings bars suit under RCRA. . . ." 151 F.3d at 619 (emphasis in original). The VIM defendants, accordingly, face an unusually heavy burden to show that abstention is appropriate under either *Colorado River* or *Burford*. As we explain, they fail to meet it. The district court's finding otherwise was an abuse of discretion.

A.  *Colorado River Abstention*

The *Colorado River* abstention doctrine stems from *Colorado River Water Conservation District v. United States* and permits federal courts to defer to a "concurrent state proceeding" as a matter of "wise judicial administration." 424 U.S. at 818. The doctrine comes into play when parallel state court and federal court lawsuits are pending between the same parties. The prudential doctrine is a matter of judicial economy, but the Supreme Court cautioned at the birth of this doctrine that "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration

are considerably more limited than the circumstances appropriate for [other theories of] abstention." *Id*. In the *Colorado River* case itself, the Supreme Court held that a district court properly abstained from deciding federal water rights questions when the federal government itself and the other interested parties were all parties in comprehensive state court proceedings to resolve the same questions.

But most relevant to this case, the Supreme Court began its analysis of the factors relevant to abstention by examining the relevant federal statute. The statute was the McCarran Amendment, which gave the consent of the United States to be a defendant in state court proceedings over water rights. "The clear federal policy evinced by that legislation is the avoidance of piecemeal adjudication of water rights in a river system." 424 U.S. at 819. The amendment also adopted a policy that recognized the availability of comprehensive state court proceedings to resolve water rights within a river system. *Id.* The Supreme Court decision creating *Colorado River* abstention deferred to those state proceedings in order to stay consistent with congressional policy. The Court's deference to congressional policy was all the more compelling because both Congress and the Court were taking the unusual step of requiring the federal government itself to litigate its claims and defenses in a state court.

In this case, by contrast, the policy choices by Congress point in the opposite direction. The RCRA provisions plainly contemplate and authorize citizen suits going

forward *even if a federal or state agency files a later parallel action*. If we needed to look beyond the statutory language, we would find in the legislative history a clear signal from Congress to the courts not to figure out ways to delay citizen suits to enforce RCRA:

> Although the Committee has not prohibited a citizen from raising claims under state law in a section 7002 action, the Committee expects courts to exercise their discretion concerning pendent jurisdiction in a way that will not frustrate or delay the primary goal of this provision, namely the prompt abatement of imminent and substantial endangerments.

H.R. Rep. No. 98-198, 1, 98th Cong., 2nd Sess., pt. 1, at 53 (1984), reprinted in 1984 U.S. Code Cong. & Admin. News 5576, 5612.

In addition to conflicting with congressional policy choices reflected in RCRA itself, the district court's decision to abstain here stretched *Colorado River* abstention too far. Determining whether *Colorado River* abstention should apply requires a district court to make a two-part inquiry. "First, the court must determine whether the concurrent state and federal actions are actually parallel*." Tyrer v. City of South Beloit*, 456 F.3d 744, 751 (7th Cir. 2006) (internal quotations omitted). If so, the court must consider second whether "exceptional circumstances" justify abstention. VIM's argument for *Colorado River* abstention fail both parts of the test.

Two suits are parallel for *Colorado River* purposes when "substantially the same parties are contemporaneously

litigating substantially the same issues." *Id.* at 752 (internal quotation omitted). Precisely formal symmetry is unnecessary. A court should examine "whether the suits involve the same parties, arise out of the same facts and raise similar factual and legal issues." *Id.* In essence, the question is whether there is a "substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Clark v. Lacy,* 376 F.3d 682, 686 (7th Cir. 2004) (internal quotation omitted). "Any doubt regarding the parallel nature of the [state] suit should be resolved in favor of exercising jurisdiction." *AAR International, Inc v. Nimelias Enterprises S.A.,* 250 F.3d 510, 520 (7th Cir. 2001).

The plaintiffs contend in their RCRA § 6972(a)(1)(A) "violation" claim that VIM's dumping and processing of "A" grade, "B" grade, and "C" grade waste violated federal and state laws. They also brought an "endangerment" claim under RCRA § 6972(a)(1)(B). Neither of these claims, as we have explained above, is barred by the statutory restrictions in RCRA. Meanwhile, IDEM's first and second lawsuits allege that VIM's dumping and processing of "C" grade and "B" grade waste, respectively, violate Indiana law.

The first and second IDEM suits are not parallel to this citizen suit for purposes of *Colorado River* abstention. First, and most simply, the parties are different. The plaintiff in the IDEM suits is the state agency; the plaintiffs here are citizens who say they are directly affected by defendants' violations. In an ideal world, of course, one would expect IDEM to represent the interests of

these citizen-plaintiffs, and we recognize a general align-ment of their interests even here. But Congress enacted the citizen-suit provisions of RCRA and other environ-mental laws because the world is not ideal, because government agencies face many demands on their re-sources, because administrations and policy priorities change, and because regulatory agencies are subject to the phenomenon known as "agency capture." See gener-ally, Rachel E. Barkow, *Insulating Agencies: Avoiding Cap-ture Through Institutional Design*, 89 Tex. L. Rev. 15, 21-24 (2010) (summarizing agency-capture phenomenon and collecting sources); Nicholas Bagley and Richard L. Revesz, *Centralized Oversight of the Regulatory State*, 106 Colum. L. Rev. 1260, 1284-85 (2006) (reviewing agency-capture literature). Under RCRA, therefore, despite a significant congruence of interests, we cannot treat IDEM and these plaintiffs as if they were the same party.[6]

---

[6] Our dissenting colleague points out correctly that *Colorado River* abstention does not require precise identity of parties. Post at 54, citing *Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004). But *Clark* and the case it followed, *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700-01 (7th Cir. 1992), each applied *Colorado River* abstention where one case was being pursued by a corporation and the parallel suit by one or more shareholders of the same corporation, for the benefit of the corporation. The interests of the different plain-tiffs were therefore more closely aligned than those of IDEM and these plaintiffs in this case. To focus on the different interests here, it is worth recalling that when Indiana created the agency, the legislature deliberately chose to call it not the

(continued...)

Second, the claims in these cases are different. The plaintiffs are correct that their claims based on VIM's dumping and processing of "A" grade waste cannot be addressed in the IDEM suits under state law because Indiana law exempts "A" grade waste from regulation. See 329 Ind. Admin. Code § 11-3-1(7).

Third, VIM conceded at oral argument that the federal courts have exclusive jurisdiction over the plaintiffs' "endangerment" claim.[7] Our precedent holds that "where

---

[6] (...continued)

Department of Environmental *Protection* but the Department of Environmental *Management*. Also, the cited cases both arose under state law, and Congress had not contemplated and approved the pursuit of similar cases by both the government agency and citizen-plaintiffs, as Congress did in enacting RCRA's citizen-suit provisions.

[7] The majority of courts that have examined whether jurisdiction over RCRA citizen suits is exclusively federal have concluded that it is. See *Blue Legs v. United States Bureau of Indian Affairs*, 867 F.2d 1094, 1098 (8th Cir. 1989) (stating that federal courts have exclusive jurisdiction over RCRA citizen suits); *Interfaith Community Organization Inc. v. PPG Indus., Inc.*, 702 F. Supp. 2d 295, 307 (D.N.J. 2010) (same); *Remington v. Mathson*, 2010 WL 1233803, at *8-9 (N.D. Cal. Mar. 26, 2010) (same); *City of Waukegan v. Arshed*, 2009 WL 458621, at *1, 3 (N.D. Ill. Feb. 23, 2009) ("Indeed, although not entirely a settled matter, most courts have held that RCRA actions are exclusively federal"); *Marrero Hernandez v. Esso Standard Oil Co.*, 597 F. Supp. 2d 272, 282 (D. P. R. 2009) *K-7 Enters., L.P. v. Jester*, 562 F. Supp. 2d 819, 827 (E.D. Tex. 2007); *White &*

(continued...)

a plaintiff's nonfrivolous claim invokes the exclusive
jurisdiction of federal courts, the *Colorado River* stay is not
appropriate." See *Medema v. Medema Builders, Inc.*, 854
F.2d 210, 215 (7th Cir. 1988); see also *Chico Service Station*,
633 F.3d at 31 (noting cases holding that federal courts
have exclusive jurisdiction over RCRA suits and ex-
plaining "we are leery of abstaining where litigants may
be unable to press their federal claims in a state fo-
rum"). Thus, neither IDEM's first nor second suit—suits
that were brought in Indiana state courts exclusively
under Indiana state law—could fully dispose of either
of the plaintiffs' RCRA claims. This is true regardless of
the facts that VIM is a defendant in both actions, that the
plaintiffs' interests are generally aligned with IDEM's
interests, and that both suits generally deal with VIM's
treatment of "solid waste" at the same facility. The plain-
tiffs' RCRA claims could not be fully "parallel" with
either of IDEM's suits for purposes of the district court's
abstention under the *Colorado River* doctrine. The district
court's finding otherwise was an abuse of discretion.

Even if the suits were parallel, VIM's abstention argu-
ment also fails at the second step of the *Colorado River*
analysis: whether "exceptional circumstances" justify

---

[7] (...continued)
*Brewer Trucking, Inc. v. Donley*, 952 F. Supp. 1306, 1312 (C.D.
Ill. 1997); but see *Davis v. Sun Oil Co.*, 148 F.3d 606, 611-12 (6th
Cir. 1998) (comparing jurisdictional language in RCRA to
Title VII jurisdictional language analyzed by the Supreme
Court in *Yellow Freight System, Inc. v. Donnelly*, 494 U.S. 820, 823
(1990), and holding that federal courts do not have exclusive
jurisdiction over RCRA citizen suits).

abstention. See *Tyrer*, 456 F.3d at 751. The court's task "is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 25-26 (1983) (emphasis in original). In our circuit, "the court must consider a number of non-exclusive factors that might demonstrate the existence of exceptional circumstances." *Clark*, 376 F.3d at 685 (internal quotations omitted). Those factors include:

> 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

*Tyrer*, 456 F.3d at 754 (citation omitted); see also *Moses H. Cone Memorial Hosp.*, 460 U.S. at 23-27; *Colorado River*, 424 U.S. at 818-19. These factors are not meant to be a "mechanical checklist," but require careful balancing by the federal district court. See *Moses H. Cone Memorial Hosp.*, 460 U.S. at 16. "The weight to be given to any one

factor may vary greatly from case to case, depending on the particular setting of the case," but in any case, the evaluation must be made "with the balance heavily weighted in favor of the exercise of jurisdiction." *Id*.

The district court found there was "a very real threat of piecemeal litigation," which would duplicate the amount of judicial resources needed to resolve the dispute and present the possibility of inconsistent results. For reasons previously stated, we believe that the district court put too much weight on this factor in the context of a RCRA suit. The text of section 6972 shows that Congress envisioned, embraced, and expressly permitted parallel (*i.e.*, "piecemeal") litigation when the citizen suit has satisfied RCRA's statutory conditions. Congress determined, in the context of a RCRA citizen suit, that judicial efficiency simply is not the paramount concern. The statute permits citizen and government lawsuits to be prosecuted simultaneously, so long as the citizen-plaintiffs have complied with the notice and prior filing requirements in the statute. Because Congress was not troubled by "piecemeal litigation" and the potential for inconsistent outcomes, the factor is not an extraordinary circumstance required for *Colorado River* abstention.

Our dissenting colleague points out correctly that RCRA gives states a vital role in managing environmental problems to protect the health and safety of their residents. Post at 56-57. But when we look at RCRA as a whole, we see that Congress also chose not to place absolute faith in state and federal agencies. It provided

for citizen suits to enable affected citizens to push for
vigorous law enforcement even when government
agencies are more inclined to compromise or go slowly.
The plaintiffs in this case are doing nothing more
than exercising the rights that Congress gave them to
protect their own health and safety.

Our dissenting colleague also asserts that we have not
identified a federal interest that would be impaired if this
federal action is stayed pending outcome of the state
actions. Post at 60. With respect, we do not believe
that plaintiffs were required to do so, especially at the
early stage of their federal lawsuit, which was not
stayed but actually dismissed. Congress authorized this
action to be filed when the federal and state agencies
chose not to respond with their own actions within
the prescribed waiting period. That failure to respond
is reason enough, under RCRA, to allow the federal
action to proceed and to give these plaintiffs the oppor-
tunity to act for themselves. We think it unlikely that
these plaintiffs want to waste their time and energy on
truly unnecessary litigation. If they can be satisfied in
the future that IDEM is in fact protecting their interests
adequately, they may choose to drop this lawsuit.
But Congress and RCRA have given that choice to plain-
tiffs, not to the federal courts. Until the plaintiffs make
that choice, they are entitled to push for more vigorous
enforcement of the laws designed to protect their health,
safety, and property. When this case finally addresses
the merits, and if the IDEM actions have been resolved by
then, the federal court will be entitled to insist that plain-
tiffs show how the resolution of those cases was not

sufficient. But plaintiffs need not make such a showing at this early stage of the federal litigation.

Remember, too, that in this case, before the plaintiffs filed their federal suit under RCRA, they attempted to intervene in IDEM's first suit to bring their claims. Based on VIM's objection, they were rebuffed. In other words, but for VIM's objection, there would be no piecemeal litigation. Much of the substance of plaintiffs' RCRA claims would have been encompassed in IDEM's first suit, as would the "B" waste claims in IDEM's second suit, for that matter. Having successfully blocked the plaintiffs' attempt to bring all of these claims in IDEM's first suit, VIM should not now be able to object to having to defend itself simultaneously against claims by the state and the citizen-plaintiffs. As we said above, VIM cannot have it both ways. We give no weight to this factor of the *Colorado River* analysis in the context of a RCRA citizen suit, particularly one in which the defendants succeeded in thwarting the plaintiffs' efforts to bring their claims in the first action.

The district court also found that the state court was fully capable of providing an adequate remedy and that the plaintiffs' RCRA claims were really state law claims dressed as RCRA claims: "While superficially it may appear that federal law governs the outcome of plaintiff's RCRA claims, that is not really the situation." Particularly with regard to the "A" grade waste and the plaintiffs' RCRA "endangerment" claim, each of these propositions is incorrect. Again, IDEM has not brought claims under federal law in either of its suits, and "A" grade

waste is regulated only under federal law. There is no reason to expect that state courts hearing IDEM's first and second suits will be able to provide any remedy at all with regard to the "A" grade waste. Nor will the state courts be able to take action under RCRA's "endangerment" provision. VIM concedes that jurisdiction for a claim brought under that RCRA provision lies exclusively in federal court. These are not extraordinary circumstances that might warrant abstention.[8]

The district court's use of *Colorado River* abstention in this case was unprecedented. VIM, the district court, and our dissenting colleague have not identified any case in any court, apart from the district court's decision in this case, in which a RCRA citizen suit that complied with the statutory requirements was nevertheless stayed or dismissed under *Colorado River*. Given Congress's clear expression of its intent to permit parallel, simultaneous litigation in RCRA cases, many other courts hearing this issue under RCRA or under the CWA, with its identi-

---

[8] VIM argues that if the state courts order full remediation of the "C" grade and "B" grade waste as a result of IDEM's pending lawsuits, then the plaintiffs' "endangerment" claims will disappear because any endangerment posed by the waste at the site will have been cured. This speculation—that the plaintiffs' claims might become moot at some point in the future if the state courts provide a sufficient remedy for problems at the VIM facility—is not helpful in the *Colorado River* analysis. The point is that, at least at this stage of the case, we cannot assume that either of the plaintiffs' RCRA claims can be adequately remedied by the state court.

cal statutory language, have declined to abstain under *Colorado River*. See, *e.g.*, *Snellback Properties, L.L.C. v. Aetna Development Corp.*, 2009 WL 1606945, at \*2 (N.D. Ill. June 9, 2009) (*Colorado River* abstention not appropriate for RCRA claims); *Spillane v. Commonwealth Edison Co.*, 291 F. Supp. 2d 728, 735 (N.D. Ill. 2003) (same); *Long Island Soundkeeper Fund, Inc. v. New York City Dep't of Environmental Protection,* 27 F. Supp. 2d 380, 385 (E.D.N.Y. 1998) (*Colorado River* abstention improper for CWA citizen suit; a stay "would effectively rewrite the citizen suit provision of the CWA"); *Mutual Life Ins. Co. of New York v. Mobil Corp.*, 1998 WL 160820, at \*5 (N.D.N.Y. Mar. 31, 1998) (rejecting *Colorado River* abstention for RCRA and CWA claims); *Pirgim Public Interest Lobby v. Dow Chemical Co.,* 1996 WL 903838, at \*5-7 (E.D. Mich. Feb. 16, 1996) (rejecting *Colorado River* abstention under CWA where citizen-plaintiffs complied with statute and "citizen input is specifically contemplated and provided for under the Clean Water Act").

The cases VIM has cited are inapposite. One, from the Fifth Circuit, stands for the uncontroversial proposition that a RCRA citizen suit that is not statutorily preempted must satisfy the case-or-controversy requirements of Article III of the Constitution. *Environmental Conservation Org. v. City of Dallas*, 529 F.3d 519, 526 (5th Cir. 2008) (mootness inquiry is appropriate in a citizen suit brought under the CWA). VIM also looks to our ruling in *Friends of Milwaukee's Rivers* in which we remanded for further development of the defendants' arguments that the plaintiff's suit was barred by res judicata. See 382 F. 3d at 765. Neither of these cases assists VIM. We do not

suggest, of course, that once a citizen suit has cleared RCRA's statutory hurdles it is immune from all other constitutional and preclusive doctrines, such as standing, mootness, and claim or issue preclusion. None of these hurdles are problems here. The district court abused its discretion by invoking *Colorado River* abstention to decline to hear this citizen suit under RCRA where the plaintiffs have met the statutory requirements set by Congress.[9]

### B. *Burford Abstention*

The district court also held that abstention was appropriate under the *Burford* abstention doctrine, stemming from *Burford v. Sun Oil Co.*, 319 U.S. 315, 317-18 (1943), which involved a federal court challenge to the validity

---

[9] When abstention is appropriate under *Colorado River*, our circuit has a strong preference for a stay rather than a dismissal of the federal suit. As we explained in *Lumen Construction, Inc. v. Brant Construction Co.*, 780 F.2d 691, 698 (7th Cir. 1986): "A dismissal, even without prejudice, creates a risk that the federal plaintiff will be time-barred from reinstating his federal suit if the state proceeding does not result in a final decision on the merits." A stay permits the court to retain jurisdiction and "has the additional advantage of bringing the case back before the same federal judge if a determination is needed as to the preclusive effects of the state judgment or decisions." *Id*. On this point, all members of the panel agree that it was an abuse of discretion to dismiss the case under *Colorado River*, though Judge Ripple would affirm a stay, if the district court had only stayed the case.

of a Texas Railroad Commission order granting a permit to drill oil wells. Texas had established a comprehensive regulatory regime for the oil and gas industries that was administered by the Commission. See *id*. at 320-25. The state had also created a thorough, particularized system of judicial review where Commission orders could be appealed to state courts in only one particular county. See *id*. at 325-27. The *Burford* Court recognized Texas's interest in a unified gas and oil policy due to the significance of those industries in the state's economy. See *id*. at 320. Because Texas had routed all Commission cases through the state court in one county, that court had become specially equipped to handle those cases. The Supreme Court found that parallel federal court jurisdiction would interfere with a specially designed state regulatory scheme. See *id*. at 332-34.

Later cases refined the doctrine to two narrow situations in which federal courts may abstain under *Burford*. First, a federal court may choose to abstain when it is faced with "difficult questions of state law" that implicate significant state policies. See *New Orleans Public Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) ("*NOPSI*"); *Colorado River*, 424 U.S. at 814 (discussing *Burford* abstention). (The district court here correctly determined that this type of abstention did not apply, and VIM does not challenge this conclusion.) Second, abstention also may be appropriate when concurrent federal jurisdiction would "be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *NOPSI*, 491 U.S. at 361, quoting *Colorado River*, 424 U.S. at 814. In other words, federal

courts may abstain when principles of federalism warrant deference to a state's regulatory regime. The district court found that this second basis for *Burford* abstention was appropriate because Indiana has acted to achieve its own environmental goals by designing a regulatory regime to develop, control and preserve the environment on a statewide basis, and that the plaintiffs' suit would require the district court to second-guess IDEM's application of Indiana law. We disagree with the district court's conclusion.

Our cases teach that for this second basis of *Burford* abstention to apply, the mere existence of a statewide regulatory regime is not sufficient. The state must "offer some forum in which claims may be litigated," and this forum must "stand in a special relationship of technical oversight or concentrated review to the evaluation of those claims." *Property & Casualty Insurance Ltd.*, 936 F.2d at 323. In other words, judicial review by state courts *with specialized expertise* is a prerequisite to *Burford* abstention. See *International College of Surgeons*, 153 F.3d at 364 (*Burford* abstention was not appropriate because any court of general jurisdiction could review final administrative decisions); *Nelson v. Murphy*, 44 F.3d 497, 501 (7th Cir. 1995) (because Illinois did not seek to impose a uniform policy regarding the treatment of mentally ill persons confined in its mental facilities and instead divided responsibility among its criminal courts statewide, *Burford* abstention did not apply).

Suits brought under Indiana's environmental laws are heard in courts of general jurisdiction throughout the

state. See Ind. Code § 13-30-1-9. Unlike the specialized
state court that heard appeals from the Texas Railroad
Commission decisions in *Burford*, Indiana courts of
general jurisdiction do not "stand in a special relation-
ship of technical oversight or concentrated review" to
evaluate environmental claims. See *Property & Casualty
Insurance Ltd.*, 936 F.2d at 323.[10] Conceding that Indiana
courts of general jurisdiction are not "specialized courts,"
VIM nonetheless contends that the Indiana system for
handling solid waste claims qualifies as a "special pro-
ceeding" warranting *Burford* abstention. VIM points out
that a court may appoint a special master with expertise
in environmental actions, Ind. Code § 13-30-1-10, and
that the statute provides for specific relief in these types
of suits, Ind. Code § 13-30-1-11. But *Burford* itself speaks
to this argument. It teaches that judicial review must,
by state legislative design, be concentrated in a few
particular courts for its narrow abstention doctrine to be
applicable.[11] See 319 U.S. at 326-27. The Indiana courts of

---

[10] As we explain below, decisions by a state administrative
agency regarding the grant or denial of a permit may be
different, see, *e.g.*, Ind. Code § 13-15-6-1 (directing appeals
from a permit decision by the IDEM Commissioner to the
Office of Environmental Adjudication), but this is not a permit
case.

[11] In at least one of our prior decisions we used the phrases
"specialized forum" and "specialized proceeding" interchange-
ably, see, *e.g., Property and Casualty Insurance Ltd.*, 936 F.2d at
323. However, our meaning was clear. Where a "large body of

(continued...)

general jurisdiction do not satisfy this essential condition of *Burford* abstention. The mere existence of a state regulatory regime, even one providing an option for special masters and specific relief, does not permit federal courts to abstain. See *NOPSI*, 491 U.S. at 362.

We rejected arguments parallel to VIM's in *PMC Inc. v. Sherwin Williams Co.*, 151 F.3d at 619. VIM makes no real effort to distinguish our reasoning in that case, in which we found that where a plaintiff's RCRA claim had satisfied the statutory requirements set by Congress, *Burford* abstention would be "an end run around RCRA." The First Circuit recently agreed with this reasoning and reversed a district court's *Burford* abstention in a RCRA citizen suit. See *Chico Service Station Inc.*, 633 F.3d at 31-34; see also *Boyes v. Shell Oil Products Co.*, 199 F.3d 1260, 1270 (11th Cir. 2000) (finding that district court's abstention from exercising its jurisdiction to hear RCRA under *Burford* and primary jurisdiction doctrines was improper because RCRA preempted state law). The majority of district courts addressing *Burford* abstention in this context have also refused to abstain. See, *e.g.*, *Interfaith Community Org.*, 702 F. Supp. 2d at 307-10 (rejecting *Burford* and *Colorado River* abstention); *K-7 Enterprises*, 562 F. Supp. 2d at 826-28 (rejecting *Burford* abstention); *College Park Holdings, LLC v. Racetrac Petroleum, Inc.*, 239 F. Supp. 2d

---

[11] (...continued)

courts" could provide judicial review, there is no specialized forum or proceeding that offers the essential technical oversight needed for *Burford* abstention to apply. See *id*.

1322, 1326-29 (N.D. Ga. 2002) (rejecting abstention under *Burford* and primary jurisdiction doctrine); *White & Brewer Trucking*, 952 F. Supp. at 1311-14 (rejecting *Burford* abstention); *Craig Lyle Ltd. P'ship v. Land O'Lakes, Inc.*, 877 F. Supp. 476, 483-84 (D. Minn. 1995) (rejecting abstention under *Burford* and the primary jurisdiction doctrine).

VIM relies on one case from the Sixth Circuit in which *Burford* abstention was upheld in a RCRA citizen suit, but that case and several others like it are easily distinguishable. They all amounted to improper collateral attacks on permitting decisions for which there were other channels for judicial review. In *Coalition For Health Concern v. LWD, Inc.*, 60 F.3d 1188, 1195 (6th Cir. 1995), the Sixth Circuit found that the district court should have abstained from hearing a RCRA citizen suit that challenged the hazardous waste permits that were issued under Kentucky's regulatory system. See *id.* at 1195; see also *Palumbo v. Waste Technologies Indus.*, 989 F.2d 156, 159-60 (4th Cir. 1993) (*Burford* abstention warranted in a RCRA citizen suit brought under section 6972(a)(1)(B) against the operators of an incinerator; suit was a collateral attack on operating permits issued to the incinerator by the state of Ohio); *Ada-Cascade Watch Co. v. Cascade Resource Recovery Inc.*, 720 F.2d 897, 903-06 (6th Cir. 1983) (*Burford* abstention appropriate in plaintiffs' challenge to Michigan's decision to issue permit to hazardous waste facility, where state had developed a complex and systematic permit review process and state law centralized challenges to that process in a specific court); *Sugarloaf Citizens Ass'n v. Montgomery County*, 33 F.3d 52, 1994 WL

447442, at *6 (4th Cir. 1994) (unpublished decision) (plain-tiffs' RCRA claims were a collateral attack on permitting decision by state environmental agency; abstention under *Burford* was warranted to avoid interference in complex statutory scheme); see also 42 U.S.C. § 6972(b)(2)(D) (prohibiting use of § 6972 (a)(1)(B) to challenge permitting decisions). In other words, the plaintiffs were acting contrary to the states' respective decisions to issue the permits in question, not in concert with those decisions.[12] It is unsurprising that, in that limited context, the Sixth and Fourth Circuits would conclude that those collateral attacks would "be disruptive of state efforts to establish a coherent policy," *NOPSI*, 491 U.S. at 361, and that in that context, very different from the one here, *Burford* abstention could play a role.

Here, however, the plaintiffs' citizen suit is not a collateral attack on any permitting or other regulatory decision by the State of Indiana. The plaintiffs' suit is structured to complement and enhance IDEM's efforts, as citizen suits brought under RCRA should. See H.R. Rep. No. 98-198, pt. I, at 53 (1983), reprinted in 1984 U.S.C.C.A.N. 5576, 5612 (in the course of amending RCRA to broaden its citizen suit authority, noting that citizen suits "complement, rather than conflict with" agency enforcement of

---

[12] Additionally, Ohio and Michigan each used an administrative procedure that directed the review of permitting decisions to one state agency or commission—the specialized forum or proceeding necessary to support *Burford* abstention. See *Palumbo*, 989 F.2d at 159 (Ohio); *Ada-Cascade Watch Co.*, 720 F.2d at 905 (Michigan).

the law); see also *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 60 (1987) (a "citizen suit is meant to supplement rather than to supplant governmental action"). Allowing the plaintiffs to bring their citizen suit under RCRA in federal court will not disrupt IDEM's comprehensive regulatory efforts. To the contrary, exercise of federal jurisdiction in these circumstances will further federal and state environmental policy goals without any real risk of disruption of regulatory efforts by the concerned governmental agencies. The district court's decision to abstain from exercising its jurisdiction under *Burford* was an abuse of discretion.

Finally, we recognize that the busy district court's decision to abstain in this case was based on a healthy respect for state courts and a desire to avoid duplicating or interfering with their efforts. For the reasons we have explained, we believe the congressional policy choices reflected in the RCRA citizen-suit provisions remove the abstention options from the district court's toolbox. The district court retains other tools for working smoothly with the state courts. There is no reason the federal and state judges cannot confer with one another and coordinate their management of the related cases, including discovery. Federal district judges often need to make such efforts to coordinate with state trial judges when dealing with the complexities of multidistrict litigation under 28 U.S.C. § 1407 and when dealing with complex discovery and other coordination problems.

If IDEM should achieve comprehensive relief in its state court lawsuits, the federal judge will be entitled to

press the citizen-plaintiffs as to what more they hope to accomplish in this suit. We emphasize, however, that the federal court in this case has a duty to press forward here. Congress has extended to these plaintiffs the right to pursue relief in a federal district court. The plaintiffs are not required to rely exclusively on the state agency in lawsuits in which they may only watch from the sidelines. The goal of RCRA is "the prompt abatement of imminent and substantial endangerments," and the district court has a duty not to allow progress toward that goal to be derailed or slowed because of possible delays in state proceedings. See *Blue Legs*, 867 F.2d at 1098, quoting H.R. Rep. No. 98-198, 1, reprinted in 1984 U.S.C.C.A.N. 5576, 5612.

V.  *Conclusion*

The plaintiffs' RCRA citizen suit should go forward, except as to the violation claims concerning "C" grade waste that were part of the first IDEM lawsuit against defendant VIM. In all other respects, the plaintiffs met the statutory requirements of RCRA. Because the plaintiffs satisfied the statutory requirements for bringing their citizen suit, abstention doctrines should not have been used to block the plaintiffs from pursuing the avenues that Congress gave them in RCRA. The district court's judgment dismissing the case is REVERSED and the action is REMANDED for further proceedings.

RIPPLE, *Circuit Judge*, concurring in part and dissenting in part.  I join the majority opinion on several issues, but I cannot agree with the majority's discussion and conclusion regarding abstention under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). I therefore must respectfully dissent.

**A.**

I concur with my colleagues on several issues. I agree that the statutory bar against citizen suits in RCRA is not jurisdictional. The majority opinion also correctly holds that the statutory bar does not apply to Count II of the plaintiffs' complaint, seeking relief under the "endangerment" provision of RCRA, 42 U.S.C. § 6972(a)(1)(B).

Regarding the plaintiffs' claim under the "violations" provision of RCRA, 42 U.S.C. § 6972(a)(1)(A), I concur that the first state action, filed by IDEM in October 2008, does not completely bar this claim. That the focus of the first IDEM suit is narrower than the action that the plaintiffs sought to bring is evident from the plaintiffs' denial by the state court to intervene and from IDEM's filing of a second suit. The second IDEM suit, as the majority concludes, was filed too late to constitute a bar to the plaintiffs' federal suit.

I also agree with the majority's candid admission that the precise contours of the IDEM suits are difficult to ascertain. More importantly, the exact contours of the *relief* that might be granted in the IDEM suits are difficult to predict. Finally, I concur that the district court abused

its discretion in finding abstention under the *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), doctrine appropriate.

### B.

Where I part company from my colleagues is with respect to their application of the *Colorado River* abstention doctrine. Even here, my disagreement is not total. Nevertheless, I view the position taken by my colleagues to be an overly rigid one, which, under the circumstances of this case, produces a result contrary to the overall intent of RCRA and a procedural straitjacket for district courts in future cases.

The starting point must be the applicable standard of review. It is clearly established that the applicable standard of review for our scrutiny of a district court's decision to invoke the *Colorado River* abstention doctrine is abuse of discretion. *Prop. & Cas. Ins. Ltd. v. Cent. Nat'l Ins. Co. of Omaha*, 936 F.2d 319, 321 (7th Cir. 1991); *see also Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 664 (1978). Admittedly, given this standard's rhetorical cast, it is inherently vague and therefore susceptible to application with different degrees of vigor. However, at bottom, it simply requires that appellate courts allow district courts a significant amount of discretion to choose among the options that we might expect a reasonable trial jurist to consider in the situation at hand. *United States v. Depoister*, 116 F.3d 292, 294 (7th Cir. 1997).

That said, there can be no doubt that abstention must be invoked with great care and circumspection because

it constitutes an abnegation of the authority given the federal courts by statute. *See Colorado River*, 424 U.S. at 813. This hortatory principle is helpful and, indeed, essential, to our understanding of the abstention doctrine. That said, the principle does not become a working rule of decision until we focus on the relationship between the particular statutory cause of action and the particular abstention doctrine at issue. *See New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 359-60 (1989).

This task is especially crucial, and nuanced, when the abstention doctrine at issue is the *Colorado River* doctrine. This doctrine, as it has been developed in federal juris-prudence over the last several decades, is a particularly flexible tool that is far more susceptible to harmoniza-tion with substantive statutory schemes than some of its abstention cousins. Most notably, it does not require, in its usual application, a total abnegation of federal jurisdiction. Instead, it simply allows a prudent exercise of discretion in order to postpone federal judicial action that might intrusively impair the work of state courts or result in duplication of effort or even in conflicting determinations. *See Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 698 (7th Cir. 1986).

As I have indicated at the threshold of this opinion, there is no question that, given the dilatoriness of IDEM in filing the second suit in state court, the plaintiffs have the right to file, and to maintain, their federal action. That is not the issue we must resolve. Rather, we must determine whether the district court abused its discre-

tion when it determined that the two state court actions ought to proceed without a simultaneous proceeding in federal court.

It is clear that, with respect to at least one aspect of its determination, the district court *did* abuse its discretion because it *dismissed* the federal suit. Our precedent makes clear that a *stay* is the appropriate course of proceeding when *Colorado River* abstention is invoked. *Lumen Constr., Inc.*, 780 F.2d at 698. But does this misstep necessarily render the remainder of the district court's analysis an abuse of discretion? This inquiry requires a pragmatic assessment of the circumstances and a careful examination of the policies that animate the RCRA statute.

The test articulated for the invocation of the *Colorado River* doctrine requires parallel litigation and extraordinary circumstances. The district court's conclusion that both requirements are present and that abstention was the better course of proceeding was certainly one of the reasonable choices open to the district court. Regarding parallel litigation, we have never required that the parties in the case be identical. *See Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004). Here, no one has suggested that the state, in its role as protector of the health and safety of its citizens, has an interest in any way adverse to that of the plaintiffs. Just as importantly, all of the federal and state actions involve the same plot of land, the same alleged activity and the removal of essentially the same waste from that land. Exceptional circum-

stances, which counsel in favor of abstention, also exist.[1] Although the plaintiffs have alleged claims under RCRA, the primary source of law is state law: Indiana's Solid Waste Management Plan, enacted pursuant to RCRA. The state court also first obtained jurisdiction, and at least one of the state court proceedings, the second suit filed by IDEM, has progressed relatively further than this federal case; indeed, the parties in the state case have submitted an agreed order to the state court.

Additionally, the state proceedings seem adequate to address all of the plaintiffs' interests. Neither the parties nor the majority have identified a federal interest that is in any way impaired if the federal action is stayed pending the outcome of the state action. The district court was entitled to conclude that the concern in RCRA for prompt attention to endangerments is met by the two

---

[1] As quoted by the majority, factors to consider in determining extraordinary circumstances include:

> 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

*Tyrer v. City of South Beloit*, 456 F.3d 744, 754 (7th Cir. 2006) (citation and quotation marks omitted).

state court proceedings addressing VIM's operations. The plaintiffs claim that the federal suit involves a wider range of waste, but the contours of the state actions are not entirely clear. Nor is it apparent that the neat analytical boxes into which the plaintiffs have categorized the waste for purposes of identification are, as a matter of fact, substantially different from the objectives of the two state suits. How the plaintiffs' "endangerment" claim differs substantively from the claims of IDEM in the state proceedings is also not shown. It simply is not clear what, if anything, will be left for the federal suit to undertake if the state prevails, in any substantial way, in the state actions. Nor is it evident that there will be a need for any substantial additional remediation after the state actions have run their course.

The majority opinion emphasizes that it gives no weight to the threat of piecemeal litigation. In doing so, the majority focuses solely on that section of the RCRA statute that provides for a citizen suit when the state has been nonresponsive or inadequately responsive to the citizens' complaint. *See* 42 U.S.C. § 6972(b). Although this section no doubt ought to be the primary focus of our inquiry, in determining the propriety of an abstention decision, it is especially important to read that section within the context of the entire statutory scheme. When we read that section in the context of the entire RCRA statute, two points become especially salient to our analysis. First, the statutory scheme places great emphasis on permitting the state government to manage environmental problems that endanger the

health and safety of its residents.[2] This concern is especially important when, as here, it is the state that has developed and implemented the waste disposal plan and implements it through state law.[3] Second, the situation before us is hardly typical of a RCRA citizen suit in which a citizen makes application to the state for relief and is denied, thus triggering the right to a citizen suit under RCRA. Here, the state had in fact commenced one action focused on at least part of the violation and, albeit after the deadline stated in RCRA, commenced another action aimed at abating more of the waste of which the plaintiffs complain. Therefore, the potential for duplicative proceedings, which could result in confusion and waste *is* a concern that militates towards applying abstention.

Our prior precedent and the holdings of sister circuits do not constrain application of the *Colorado River* abstention doctrine in a federal citizen suit under RCRA.[4] Courts

---

[2] The stated objectives of RCRA reflect a vision of state-federal cooperation. *See* 42 U.S.C. § 6902(a). Specifically, states would create and implement, under RCRA, comprehensive plans regulating solid waste. *See* 42 U.S.C. § 6941.

[3] See Indiana's Solid Waste Management Plan, approved by the EPA and codified in the Indiana Code in section 13-20 and in Title 328 of the Indiana Administrative Code.

[4] The majority opinion cites to five district court decisions finding abstention under the *Colorado River* doctrine inapplicable in a federal suit under RCRA or the Clean Water Act ("CWA").

(continued...)

previously have held abstention under the *Burford* doctrine inappropriate for federal suits under RCRA. *See Chico Serv. Station, Inc. v. Sol Puerto Rico Ltd.*, 633 F.3d 20, 31-32 (1st Cir. 2011); *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 619 (7th Cir. 1998). However, abstention under

---

[4]  (...continued)

Slip Op. at 41. Three of these opinions found abstention under the *Colorado River* doctrine inapplicable because only the federal case raised environmental claims under RCRA or CWA, and the state case involved only tort claims. *See Snellback Prop., L.L.C. v. Aetna Dev. Corp.*, 2009 WL 1606945, at *1 (N.D. Ill. June 9, 2009); *Spillane v. Commonwealth Edison Co.*, 291 F. Supp. 2d 728, 731 (N.D. Ill. 2003); *Mut. Life Ins. Co. of New York v. Mobil Corp.*, 1998 WL 160820, at *5 (N.D.N.Y. Mar. 31, 1998). In contrast, the state proceedings in this case deal with violations under Indiana's Solid Waste Management Plan, similar to the federal suit. In fact, it is not clear whether the federal claims are actually substantively different from IDEM's claims in state court.

In the remaining two cases, both the state and federal suits involved environmental claims. In both cases, however, the state agency failed to file its suit in state court before the federal case—a point which the district court emphasized. *See Long Island Soundkeeper Fund, Inc. v. New York City Dep't of Envtl. Prot.*, 27 F. Supp. 2d 380, 385 (E.D.N.Y. 1998) (noting that the state agency "had the opportunity to take the lead in enforcing the prescribed standards, but declined to do so"); *Pirgim Pub. Interest Lobby v. Dow Chem. Co.*, 1996 WL 903838, at *6 (E.D. Mich. Feb. 16, 1996) (finding "the order in which jurisdiction was obtained is of the greatest importance"). Here, IDEM filed its first suit prior to the federal suit.

*Burford* requires a *dismissal*, not a *stay*, of the case. *See Illinois Bell Tel. Co. v. Global NAPs Illinois, Inc.*, 551 F.3d 587, 595 (7th Cir. 2008). As discussed, the dismissal of this case is inappropriate because the plaintiffs have met the statutory requirements to bring a federal suit. Accordingly, those opinions finding abstention under the *Burford* doctrine inappropriate are not relevant for an examination of whether abstention under the *Colorado River* doctrine is appropriate. Those opinions, which have found *Burford* abstention inapplicable, do not address abstention under the *Colorado River* doctrine. In fact, they explicitly note that although abstention under *Burford* is inapplicable, abstention under other doctrines might still be appropriate. *See Chico*, 633 F.3d at 26 n.10 ("Because the district court based its decision solely on the *Burford* strain of abstention and [the defendant] has not argued for abstention under *Colorado River* in this appeal, we do not address the applicability of the *Colorado River* doctrine here."); *PMC, Inc.*, 151 F.3d at 619 (noting that "there may be room for applying the doctrines of abstention . . . in cases in which a state has a formal administrative proceeding in progress that the citizens' suit would disrupt").

The majority opinion contends that because the plaintiffs raise an exclusively federal claim—the "endangerment" claim under § 6972(a)(1)(B)—abstention is inappropriate based on *Medema v. Medema Builders, Inc.*, 854 F.2d 210, 215 (7th Cir. 1988). This court in *Medema*, however, made clear that it was *not* establishing a categorical rule that *Colorado River* abstention is forbid-

den whenever the federal case involves an exclusively federal claim. *Id.* ("[W]e do not mean to create a monolithic rule subject to no exceptions."). In *Medema*, we contemplated that "perhaps in rare circumstances," abstention under *Colorado River* would be appropriate even for exclusively federal claims. *Id.* at 212. Unlike *Medema*, this case involves a statute that emphasizes federal-state cooperation; there is an absence of any showing that the federal cause of action or the rights of the plaintiffs would be impaired by a stay; and it is not clear that the remedies sought in the state proceedings are substantively different from those requested in the federal case.

What does seem apparent in this case is that simultaneous litigation of the actions and simultaneous supervision of the remediation process by state and federal courts will be a recipe for delay, confusion and wasted judicial resources. These concerns were the precise motivations in *Colorado River*,[5] and it is not clear how any of the plaintiffs' interests are impaired if the federal case is stayed. Accordingly, I must respectfully dissent from removing from the district court's

---

[5] *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (noting concerns for "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation" (citation and quotation marks omitted)).

discretion the decision to stay the plaintiffs' case upon invoking abstention under the *Colorado River* doctrine.